## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PHILIP J. BERG, ESQUIRE, | : |
| *Plaintiff* | : |
| *vs*. | :CIVIL ACTION NO: 08-cv- 04083 |
| | : |
| BARACK HUSSEIN OBAMA, ET AL, | : |
| *Defendants* | : |

## ORDER

### ON DEFENDANT'S, BARACK HUSSEIN OBAMA AND THE DEMOCRATIC NATIONAL COMMITTEE'S  MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(1) and 12(b)(6)

**THIS CAUSE** came before the United States District Court Judge, Honorable R. Barclay Surrick on Defendant's Barack Hussein Obama and the Democratic National Committee's Motion to Dismiss.  Having reviewed the Motion and Plaintiff's Opposition to said Motion and for good cause shown, it is hereby

**ORDERED** that the Motion to Dismiss pursuant to F.R.C.P. 12(b)(1) and 12(b)(6) is **DENIED**.  It is further **ORDER** of this Court that the following discovery is to be turned over to Plaintiff within three (3) days:

1.    Obama's "vault" version (certified copy of his "original" long version) Birth Certificate; and

2.    A certified copy of Obama's Certification of Citizenship;

3.    A Certified copy of Obama's Oath of Allegiance.

**IT IS SO ORDERED**

Dated: September _____, 2008

_____
Hon. R. Barclay Surrick
United States District Court Judge
For the Eastern District of PA

| | | |
|---|---|---|
| PHILIP J. BERG, ESQUIRE, | | : |
| | *Plaintiff* | : |
| *vs*. | | :CIVIL ACTION NO: 08-cv- 04083 |
| | | : |
| BARACK HUSSEIN OBAMA, ET AL, | | : |
| | *Defendants* | : |

## PLAINTIFF'S OPPOSITION AND BRIEF IN SUPPORT THEREOF TO DEFENDANT'S, BARACK HUSSEIN OBAMA AND THE DEMOCRATIC NATIONAL COMMITTEE'S,  MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(1) and 12(b)(6)

Plaintiff Philip J. Berg, Esquire [hereinafter "Plaintiff"] files the within Opposition and Brief in support thereof to Defendant's, Barack Hussein Obama [hereinafter "Obama"] and the Democratic National Committee's [hereinafter "DNC"] Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) on the following grounds:

• Plaintiff has standing to bring suit against Obama and the DNC pursuant to the following:

   (1)    Plaintiff has Standing pursuant to 5 United States Code. §702;

   (2)    Plaintiff has Standing pursuant to *FEC v. Akins*, 524 U.S. 11 (1998);

   (3)    Plaintiff has Standing Pursuant to 8 U.S.C. §1481(b);

   (4)    Plaintiff has Standing under 5 U.S.C. §552(B);

   (5)    Plaintiff has Standing pursuant to 28 U.S.C. §1343, Civil Rights and Elective Franchise; and

   (6)    Plaintiff has Standing pursuant to Federal Question Jurisdiction.

• Claims are stated in which relief can be granted.  Pleadings in a Complaint are that of Notice Pleading and not Fact Pleading;

• Plaintiff has suffered *and imminently will suffer injury - an invasion of a legally protected interest which is concrete and particularized; and*

• *The injury suffered by Plaintiff is the kind of injury that Congress expected might be addressed under the statute. Plaintiff is within the zone of interest protected by the statute or constitutional provision.*

• It is imperative Obama be Court Ordered to turn over the following items in order resolve the issues presented prior to the Presidential Election:

(a) A certified copy of Obama's "vault" version ( "original" long version) Birth Certificate; and

(b). A certified copy of Obama's Certification of Citizenship; and

(c) A Certified copy of Obama's Oath of Allegiance.

At the time Plaintiff's Complaint was filed, Plaintiff was requesting protections from the Court in order to stop Obama from being nominated by the DNC as the Democratic Presidential Nominee as Obama is not eligible to serve as President of the United States. However, Obama was nominated by the DNC as the Democratic Presidential Nominee. For this reason, Plaintiff must amend his Complaint and will be requesting this Court leave to file a First Amended Complaint.

A. **OVERVIEW OF PLAINTIFF'S COMPLAINT**

Plaintiff is a life long Democrat who had always been proud of his Party. Plaintiff is a licensed attorney in good standing and has taken an oath to uphold the United States Constitution. Plaintiff has donated money and billable hours to Democratic Presidential candidates as well as to the Democratic National Committee. Plaintiff has relied on the DNC's promises to uphold our Constitution, which includes properly

vetting our Presidential Nominee and ensuring our Party's Nominee is eligible to serve as President of the United States pursuant to Article II, Section 1 of our United States Constitution.

In addition, Plaintiff has trusted the Federal Election Committee ("FEC") that they would ensure our Presidential and Congress candidates were eligible for the positions which they were seeking and running a fair and legitimate campaign process. Plaintiff has relied on the FEC, DNC and all our Elected Office Holders to uphold our Constitution and to ensure an illegal alien and/or a naturalized citizen would not be able to secure the position of President of the United States.

The DNC has pledged and promised Plaintiff and all Democratic individuals they believe that our Constitution, our courts, our institutions and our traditions are proper and work.

The DNC pledged and promised Plaintiff and all Democratic individuals they will ensure our Constitution is not a nuisance and have assured Plaintiff and democratic individuals the United States Constitution is the foundation of our democracy. It makes freedom and self-governance possible, and helps to protect our security. The Democratic Party has pledged and promised Plaintiff and other Democratic individuals they will maintain and restore our Constitution to its proper place in our government and return our Nation to the best traditions, including their commitment to government by law.

Based on the DNC's promises and assurances, Plaintiff and other democratic individuals have donated money in good faith to the DNC and other Democratic Presidential Nominees. Money donated to the DNC is used to plan the Party's quadrennial presidential nominating convention; promote the election of eligible Party

candidates, pursuant to the United States Constitution, Article II, Section I, with both technical and financial support; and works with national, state and local party organizations, elected officials, candidates and constituencies to respond to the needs and views of the Democratic electorate and the nation.

In vetting the Presidential candidate, among other things, the DNC and FEC are required to ensure the eligibility requirements pursuant to our Constitution are met and the Presidential nominee, if elected, is qualified and eligible to serve pursuant to our United States Constitution.

In order to be eligible and qualified to run for the Office of the President of the United States you <u>must</u> be a "natural born" citizen. United States Constitution, Article II, Section I.

There appears to be no question that Defendant Obama's mother, Stanley Ann Dunham, was a U.S. citizen. It is also undisputed, however, that his father, Barack Obama, Sr., was a citizen of Kenya. Obama's parents, according to divorce records, were married on or about February 2, 1961.

Defendant Obama claims he was born in Honolulu, Hawaii on August 4, 1961 and it is uncertain in which hospital he claims to have been born. Obama's grandmother on his father's side, his half-brother and half-sister all claim Obama was born not in Hawaii but in Kenya. Reports reflect that Obama's mother traveled to Kenya during her pregnancy; however, she was prevented from boarding a flight from Kenya to Hawaii at her late stage of pregnancy (which, apparently, was a normal restriction, to avoid births during a flight). By these reports, Stanley Ann Dunham Obama gave birth to Obama in Kenya, after which she flew home and registered Obama's birth. There are records of a

"registry of birth" for Obama, on or about August 8, 1961 in the public records office in Hawaii.

Upon investigation into the alleged birth of Obama in Honolulu, Hawaii, Obama's birth is reported as occurring at two (2) separate hospitals, Kapiolani Hospital and Queens Hospital. Wikipedia English Version, under the subject "Barack Obama," states Obama was born at Kapiolani Hospital. Wikipedia Italian Version, under the subject "Queens Hospital," states Barack Obama was born in Queens Hospital. Furthermore, the Rainbow Edition News Letter, November 2004 Edition, published by the Education Laboratory School, attached as **EXHIBIT "1"**, did a several page article of an interview with Obama and his half-sister, Maya. The Rainbow Edition News Letter reports Obama was born August 4, 1961 at Queens Medical Center in Honolulu, Hawaii. More interesting in February 2008, Obama's half-sister, Maya, was again interviewed in the Star Bulletin, attached as **EXHIBIT "2"**, and this time, Maya states Obama was born August 4, 1961 in Kapiolani Medical Center for Women & Children.

Wayne Madsen, Journalist with Online Journal as a contributing writer published an article on June 9, 2008 stating that a research team went to Mombassa, Kenya, and located a Certificate Registering the birth of Barack Obama, Jr. to his father, a Kenyan citizen and his mother, a U.S. citizen, attached as **EXHIBIT "3"**.

Even if Obama was, in fact, born in Hawaii, he lost his U.S. citizenship when his mother re-married and moved to Indonesia with her Indonesian husband. In or about 1966, when Obama was approximately five (5) years old, his mother, Stanley Ann Dunham, married Lolo Soetoro, a citizen of Indonesia, whom she had met at the Hawaii University, and moved to Indonesia with Obama. Obama lost his U.S. citizenship,

when his mother married Lolo Soetoro, and took up residency in Indonesia. Loss of citizenship, in these circumstances, under U.S. law (as in effect in 1967) required that foreign citizenship be achieved through "application." Such type of naturalization occurred, for example, when a person acquired a foreign nationality by marriage to a national of that country. Nationality Act of 1940, Section 317(b). A minor child follows the naturalization and citizenship status of their custodial parent. A further issue is presented that Obama's Indonesian stepfather, Lolo Soetoro, either signed an acknowledgement acknowledging Obama as his son or Lolo Soetoro adopted Obama, giving Obama natural Indonesia citizenship which explains the name Barry Soetoro and his citizenship listed as Indonesian.

Obama admits in his book, "*Dreams from my father*" Obama's memoir (autobiography), that after his mother and Lolo Soetoro were married, Lolo Soetoro left Hawaii rather suddenly and Obama and his mother spent months in preparation for their move to Indonesia. Obama admits when he arrived in Indonesia he had already been enrolled in an Indonesia school and his relatives were waiting to meet him and his mother. Lolo Soetoro, an Indonesian State citizen, could not have enrolled Obama in school unless Lolo Soetoro signed an acknowledgement acknowledging Obama as his son, which had to be filed with the Government. Under Indonesian law, when a male acknowledges a child as his son, it deems the son, in this case Obama, as an Indonesian State citizen. Constitution of Republic of Indonesia, Law No. 62 of 1958 Law No. 12 of 2006 dated 1 Aug. 2006 concerning Citizenship of Republic of Indonesia, Law No. 9 of 1992 dated 31 Mar. 1992 concerning Immigration Affairs and Indonesian Civil Code (Kitab Undang-undang Hukum Perdata) (KUHPer) (Burgerlijk Wetboek voor Indonesie)

states in pertinent part, *State citizens of Indonesia include: (viii) children who are born outside of legal marriage from foreign State citizen mother who are acknowledged by father who is Indonesian State citizen as his children and that acknowledgment is made prior to children reaching 18 years of age or prior to marriage;* Republic of Indonesia Constitution 1945, As amended by the First Amendment of 1999, the Second Amendment of 2000, the Third Amendment of 2001 and the Fourth Amendment of 2002, Chapter X, Citizens and Residents, Article 26 states, *"(1) Citizens shall consist of indigenous Indonesian peoples and persons of foreign origin who have been legalized [sic] as citizens in accordance with law. (2) Residents shall consist of Indonesian citizens and foreign nationals living in Indonesia."*

Furthermore, under the Indonesian adoption law, once adopted by an Indonesian citizen, the adoption severs the child's relationship to the birth parents, *and the adopted child is given the same status as a natural child, Indonesian Constitution, Article 2.*

The laws in Indonesia at the time of Obama's arrival did not allow dual citizenship. If an Indonesian citizen married a foreigner, as in this case, Obama's mother was required to renounce her U.S. citizenship and was sponsored by her Indonesian spouse. The public schools did not allow foreign students, only citizens were allowed to attend as Indonesia was under strict rule and decreed a number of restrictions; therefore, in order for Obama to have attended school in Jakarta, which he did, he had to be a citizen of Indonesia, as the citizenship status of enrolled students was verified with Government records.

Obama was enrolled by his parents in a public school, Fransiskus Assisi School in Jakarta, Indonesia. Plaintiff has received copies of the school registration, attached as

**EXHIBIT "4"**, in which it clearly states Obama's name as "Barry Soetoro," and lists his citizenship as Indonesian. Obama's father is listed as Lolo Soetoro, Obama's date of birth and place of birth are listed as August 4, 1961 in Hawaii, and Obama's Religion is listed as Islam. This document was verified by television show *Inside Edition*, whose reporter, Matt Meagher, took the actual footage of the school record. At the time Obama was registered the public schools obtained and verified the citizenship status and name of the student through the Indonesian Government. All Indonesian students were required to carry government identity cards, or *Karty Tanda Pendudaks*, as well as family card identification called a ***Kartu Keluarga***. *The Kartu Keluarga is a family card which bears the legal names of all family members.*

Since Obama's birth was legally acknowledged by Lolo Soetoro, an Indonesian citizen, and/or Obama was adopted by Lolo Soetoro, which the evidence attached hereto supports, Obama became an Indonesian citizen *and bears the status as an Indonesia natural child (natural-born). For this reason, Obama would have been required to file applications with the U. S. State Department and follow the legal procedures to become a naturalized citizen in the United States, when he returned from Indonesia. If Obama and/or his family failed to follow these procedures, then Obama is an illegal alien.*

Regardless of whether Obama was officially adopted, (which required a Court process), by his Indonesian stepfather, Lolo Soetoro, or his birth was acknowledged (which only required the signing of a birth acknowledgement form), by Lolo Soetoro, one of which had to occur in order for Obama to have the name Barry Soetoro and his citizenship status listed as "Indonesian", in either and/or both cases Obama's name was required to be changed to the Indonesian father's name, and Obama became a natural citizen of Indonesia. This is proven by the school records in Jakarta, Indonesia showing

Obama's name as Barry Soetoro and his citizenship as Indonesian. *Again*, the registration of a child in the public schools in Jakarta, Indonesia was verified with the Government Records on file with the Governmental Agencies.

*The Indonesian citizenship law was designed to prevent apatride (stateless) or bipatride (dual citizenship). Indonesian regulations recognize neither apatride nor bipatride citizenship.*

*In addition, since Indonesia did not allow dual citizenship neither did the United States, Hague Convention of 1930.*

In or about 1971, Obama's mother sent Obama back to Hawaii. Obama was ten (10) years of age upon his return to Hawaii.

As a result of Obama's Indonesia "natural" citizenship status, there is absolutely **no** way Obama could have ever regained U.S. "natural born" status, if he in fact ever held such. Obama could have **only** become naturalized if the proper paperwork was filed with the U.S. State Department, in which case, Obama would have received a Certification of Citizenship.

Plaintiff is informed, believes and thereon alleges Obama was never Naturalized in the United States after his return. Obama was ten (10) years old when he returned to Hawaii to live with his grandparents. Obama's mother did not return with him, and therefore, unable to apply for citizenship of Obama in the United States. If citizenship of Obama had ever been applied for, Obama would have a Certification of Citizenship.

Furthermore, Obama traveled to Indonesia, Pakistan and Southern India in 1981. The relations between Pakistan and India were extremely tense and Pakistan was in turmoil and under martial law. The country was filled with Afghan refugees; and Pakistan's Islamist-leaning Interservices Intelligence Agency (ISI) had begun to provide arms to the Afghan mujahideen and to assist the process of recruiting radicalized Muslim

men--jihadists--from around the world to fight against the Soviet Union. Pakistan was so dangerous that it was on the State Department's travel ban list for US Citizens. Non-Muslim visitors were not welcome unless sponsored by their embassy for official business. A Muslim citizen of Indonesia traveling on an Indonesian passport would have success entering Indonesia, Pakistan and India. Therefore, it is believed Obama traveled on his Indonesian passport entering the Countries. Indonesian passports require renewal every five (5) years. At the time of Obama's travels to Indonesia, Pakistan and India, Obama was twenty (20) years old. If Obama would have been a U.S. citizen, which he was not, 8 USC §1481(a)(2) provides loss of nationality by native born citizens upon "taking an oath or making an affirmation or other formal declaration of allegiance to a foreign state...after having attained the age of eighteen years", in violation of 8 U.S.C. §1401(a)(1) Since Lolo Soetoro legally acknowledged Obama as his son and/or adopted Obama, Obama was a "natural" citizen of Indonesia, as proven by Obama's school record attached as **Exhibit "4"**.

Plaintiffs as well as many other democratic American citizens have requested proof of Obama's citizenship status, however to no avail. Obama has promised to be an open and honest candidate, however, refuses to remove any doubts from Plaintiff's and all the other democratic minds and prove his eligibility to serve as President of the United States.

Plaintiff's civil rights under the due process rights and equal protection of the laws secured by the U.S. Constitution, Fourteenth (14th) Amendment have been violated by Obama's illegal campaign and will continue to be violated if Obama is allowed to continue his campaign and if elected, assume the position of President of the United

States.  The DNC and FEC have allowed Obama to continue his campaigning, knowing these issues have arisen and have failed to take and/or instigate the proper investigation into said matters to protect Plaintiff and other registered voters.  Therefore, the only option Plaintiff had to secure and protect his civil rights was to bring action before this Honorable Court.  Moreover, our laws which protect Plaintiff, a legal registered voter, and other registered voters from fraudulent campaign schemes have been violated by the Defendants, 2 U.S.C. §437c, 2 U.S.C §437(g).  Plaintiff has standing to bring suit pursuant to 5 U.S. C §702, as well as 8 U.S. C §1481(b).

Plaintiff's rights guaranteed under the Liberty clause of the Fourteenth (14th) Amendment of the United States Constitution have already been violated.  It has been announced in the main stream media that Obama's "briefing" has already begun into our National Secrets, our Nations Top Secrets, which Obama is not privy too and in violation of our National Security, as Obama is not a legal citizen of the United States.  This has placed Plaintiff and other citizens of the United States in grave danger.  Plaintiff's Liberty as guaranteed will further be violated if Obama is allowed to be voted into and assume the position of President of the United States; Plaintiff will be further damaged and is in serious jeopardy.

Plaintiff filed the within action on or about August 21, 2008 against Defendants seeking Declaratory and Injunctive Relief, declaring Obama an illegal alien and/or only a "naturalized" citizen ineligible to serve as President of the United States and enjoining the DNC and FEC from placing Obama's name on the ballot and prohibiting Obama from further campaigning to be elected as President of the United States, a position he is ineligible to hold.

Plaintiff faxed a copy of the complaint to Obama, the DNC and FEC on August 22, 2008 prior to the hearing on the TRO before this Honorable Court. Defendants were further served by personal service on September 4, 2008. Neither the DNC nor Obama have supplied any type of proof of Obama's citizenship status and/or eligibility to serve as President of the United States. Instead, they waited until the last hour and filed their Motion to Dismiss.

Plaintiff has asked for a simple resolution. Plaintiff has asked that Obama supply a genuine certified copy of his original long version "vault" Birth Certificate and a certified copy of his Oath of Allegiance and/or Certificate of Citizenship. If in fact Obama can prove his "natural born" citizenship status, which he **cannot**, then he has not been prejudiced in anyway, but instead Plaintiff has been protected and his civil rights secured. However, if Obama is unable to supply said documentation, then he needs to withdrawal his candidacy, again which will eliminate Plaintiff's deprivations and instill Plaintiff's constitutionally protected safeguards and rights.

There is absolutely **no** other way for Plaintiff to ensure his constitutionally protected rights. The only option Plaintiff had was to bring this action. This is the first time in American History a "naturalized" citizen and/or illegal alien have been allowed to campaign for the Office of President of the United States. There are not any other ways to establish or determine the legal status of our Presidential Candidates, whether Republican and/or Democratic. The FEC and DNC have refused to verify and furnish Plaintiff with Obama's eligibility or lack thereof. Plaintiff has standing to challenge any person(s) citizenship and/or nationality status pursuant to statute, 8 U. S. C. §1481(b).

The Federal Bureau of Investigation (FBI) does not perform background checks and/or verify their eligibility on our Candidates to hold Office. According to the FBI, once a candidate is voted into Office of Congress, they are members of Congress and therefore they are given a Secret Clearance, again, without any type of background check and/or verification processes performed.

Plaintiff, as well as other Democratic voters have and are suffering the total loss of confidence in the DNC primary process because of the massive cheating and skewering of rules to make an illegitimate ineligible candidate the nominee in violation of DNC rules and the Constitution, robbing voters of their voices and votes. Plaintiff and millions of other Democratic voters have lost all trust in the integrity of the FEC and Democratic Party leaders by the total failure of the DNC to perform the most basic of functions by insisting any candidates produce basic documents in vetting their eligibility, especially after there were repeated requests demanding Obama's eligibility be proven with certified legitimate documents which had not been forged. This failure to perform even the most basic of due diligence has shattered Plaintiff's faith, along with millions of Democratic voters, in the Democratic system.

Plaintiff has been damaged financially for all monies donated, billable hours spent supporting the Democratic candidates, taxes paid by Plaintiff which went to the Secret Service for their protection of Obama for the past twenty (20) months and for the financial costs and time expended of this litigation, when Defendants could have very easily investigated, verified and obtained proof of Obama's eligibility to serve as President of the United States, if in fact he is eligible.

Plaintiff has suffered damage to his reputation and discrimination as a result of attempting to protect his rights and verify the eligibility of Obama to serve as President of the United States. Plaintiff has been repeatedly called a racist and verbally assaulted for bringing forward this lawsuit against Obama. Plaintiff is not a racist and is a paid Life Member of the NAACP. Obama himself stated to a crowd of his supporters, ***"I need you to go out and talk to your friends and talk to your neighbors. I want you to talk to them whether they are independent or whether they are Republican. I want you to argue with them and get in their face"***, see the newspaper article published in the San Francisco Gate, by Kathleen Hennessey, Associated Press Writer, on September 17, 2008, attached as **EXHIBIT "5"**. Obama is promoting attacks on non-supporters, which is creating racial tension and violence in our communities.

Plaintiff has attempted to obtain the verification and proof requested herein by way of requests, filing this action, Admissions and Request for Production of Documents served upon Defendants September 15, 2008 and by Subpoenas served upon agencies who could supply the documentation to prove Obama's citizenship status. To date, Plaintiff has not received anything. Plaintiff has received two (2) letters from agencies that were served with subpoenas claiming they need Obama's signatures to comply and/or the confidentiality of the documents were protected from disclosure to third parties under 5 U.S. C. § 552. See **EXHIBITS "6" and "7"**.

**B. THIS HONORABLE COURT HAS SUBJECT MATTER JURISDICTION AS PLAINTIFF HAS STANDING TO BRING THE WITHIN ACTION**

The DNC and Obama have filed a Motion to Dismiss based on Federal Rules of Civil Procedure, Rule 12(b)(1), claiming this Court does not have subject matter jurisdiction as Plaintiff lacks standing. This claim is inaccurate, as this Court does have subject matter jurisdiction and has the inherent power to hear this case.

However, Plaintiff requests the opportunity to amend his Complaint.

This case is easily distinguishable from _Hollander v. McCain_, 2008 U.S. Dist. LEXIS 56729 (D.N.H. 2008), where the Court held that the Plaintiff did not have standing based on the alleged harm he would suffer should McCain be elected President despite his alleged lack of eligibility under the natural born citizenship clause, Art. II, § 1, cl. 4.

The factors used in the Court's decision were that: (1) McCain's candidacy for the presidency, whatever his eligibility, was "hardly a restriction on voters' rights" because it in no way prevented them from voting for somebody else in the primary election; and (2) the harm claimed "standing alone, would adversely affect only the generalized interest of all citizens in constitutional governance" (the Court citing _Schlesinger v. Reservists Committee to Stop the War_, 418 U.S. 208, 217(1974); and (3) Plaintiff did not "allege personal injury fairly traceable to the Defendant's allegedly unlawful conduct" (the Court cited _Allen v. Wright_, 468 U.S. 737(1984) at 751; and (4) McCain was "unquestionably an American citizen."

In this case, (1) Obama's candidacy for the presidency in the general election as opposed to the primary elections prevents citizens from voting for Hillary Clinton despite

her immense popularity; (2) the harm Plaintiff suffered is particular to him because he has been denied the constitutional right to vote for an eligible candidate; (3) Plaintiff's claims are traceable to the Defendants' unlawful behavior in failing to disclose information to which voters are entitled; and (4) Defendants have failed to show that Mr. Obama is "unquestionably an American citizen."

Therefore, the factors used in *Hollander v. McCain* clearly favor Plaintiff's standing.

**1.      Plaintiff has Standing pursuant to 5  United States Code. §702**

Plaintiff has attempted to obtain the appropriate documents to prove Obama's citizenship status, or lack thereof.   The DNC and the FEC have completely ignored the complaints and requests.   In addition, Plaintiff has attempted to secure documents from other locations, which are required to turn the documents over pursuant to FOIA, however, once again has been refused.   The DNC and FEC have failed to act in their Official position and take the steps necessary to turn over the documents and institute a proper investigation to protect Plaintiff.

*5  United States Code §702* states:

"A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.  An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.  The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: Provided, that any mandatory or injunctive decree shall specify the Federal officer

or officers (by name or by title), and their successors in office, personally responsible for compliance. Nothing herein

> (1) "affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or

> (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought."

The FEC and the DNC have failed to take any action into the investigation of Obama, his fraudulent campaigning scheme which he has obtained over $400 Million Dollars, knowing he is not a U.S. Citizen.


**2.      Plaintiff has Standing pursuant to _FEC v. Akins_, 524 U.S. 11 (1998)**

Plaintiff has attempted to obtain the appropriate documents to prove Obama's citizenship status, or lack there of and has requested investigation into the eligibility status of Obama. The DNC and the FEC have completely ignored the complaints and requests.

_2 United States Code, §437c (b)_ states:

(b)     Administration, enforcement, and formulation of policy; exclusive jurisdiction of civil enforcement; Congressional authorities or functions with respect to elections for Federal office

> (1)     The Commission shall administer, seek to obtain compliance with, and formulate policy with respect to, this Act and chapter 95 and chapter 96 of title 26. The Commission shall have exclusive jurisdiction with respect to the civil enforcement of such provisions.

> (2)     Nothing in this Act shall be construed to limit, restrict, or diminish any investigatory, informational, oversight, supervisory, or disciplinary authority or function of the Congress or any committee of the Congress with respect to elections for Federal office.

*2 United States Code § 437d. Powers of Commission* states in pertinent part:

(a) Specific authorities

The Commission has the power—

(1)     to require by special or general orders, any person to submit, under oath, such written reports and answers to questions as the Commission may prescribe;

( 3)     to require by subpoena, signed by the chairman or the vice chairman, the attendance and testimony of witnesses and the production of all documentary evidence relating to the execution of its duties;

(4)     in any proceeding or investigation, to order testimony to be taken by deposition before any person who is designated by the Commission and has the power to administer oaths and, in such instances, to compel testimony and the production of evidence in the same manner as authorized under paragraph (3);

(9)     to conduct investigations and hearings expeditiously, to encourage voluntary compliance, and to report apparent violations to the appropriate law enforcement authorities.

Plaintiff is a registered voter who has standing to seek Declaratory and Injunctive Relief against the FEC, DNC and Obama pursuant to 5 U.S.C. §702. Plaintiff has a right, which is secured to him by our laws and the United States Constitution, for verification of our Presidential Nominee's eligibility to serve as President of the United States prior to the elections. Plaintiff as well as other Democratic individuals submitted complaints to the DNC and the FEC, requesting verification of Obama's citizenship status and eligibility to serve as President of the United States. The FEC and DNC had a duty to investigate Obama's citizenship status, the fact Obama has refused to prove his eligibility and obtained in excess of Four Hundred ($400) Million Dollars in Campaign Funds, is based on a fraudulent scheme if Obama is unable to prove his "natural born" citizenship

status, _2 U.S.C. §437(g)_.  The FEC is responsible for the administration, enforcement; exclusive jurisdiction of civil enforcement; Congressional authorities or functions with respect to <u>elections for Federal office</u>, _2 U.S.C. §437c(b)_.  (emphasis added)

Defendants' refusals to perform said inquiry and provide proof of our Democratic Presidential candidate's eligibility to serve as President of the United States is in violation of the very laws stated for Plaintiff and other's citizens of the United States. Obama, knowing he is not an eligible candidate to serve as President of the United States, began campaigning for the Presidential seat.  Obama's campaign has brought in over Four Hundred ($400) Million Dollars in donations based on a fraudulent campaign, which has been allowed by the Defendants, the FEC and DNC.  Plaintiff and other democratic citizens brought the issues to the attention of the DNC and the (FEC) who have refused to take any action to protect Plaintiff and/or all other democratic citizens, which is in violation of the United States Laws outlined above.  Plaintiff has demanded proof of Obama's eligibility, however to no avail.  The DNC and the FEC have a duty to investigate the issue and disclose the information ensuring Obama is eligible to campaign and serve as President of the United States, to Plaintiff and the public, who are being harmed by the fraudulent conduct of Obama, a Presidential Candidate and the DNC's Nominee.

When Congress confers standing on litigants, the generalized grievance constriction does not apply.  Congress confers standing on any individual who has been aggrieved by the denial of information required to be furnished pursuant to Statute.  It matters not that most people are or will be entitled and suffer a "generalized grievance", the statutory entitlement is sufficient.  _FEC v. Akins_, 524 U.S. 11 (1998).

*FEC v. Akins*, 524 U.S. 11 (1998), held, in pertinent part:

"1. Respondents, as voters seeking information to which they believe FECA entitles them, have standing to challenge the FEC's decision not to bring an enforcement action. Pp. 6-14………

(b)     Respondents also satisfy constitutional standing requirements.  Their inability to obtain information that, they claim, FECA requires AIPAC to make public meets the genuine "injury in fact" requirement that helps assure that the court will adjudicate "[a] concrete, living contest between adversaries." Coleman v. Miller, 307 U.S. 433, 460 (Frankfurter, J., dissenting).  United States v. Richardson, 418 U.S. 166, distinguished.  The fact that the harm at issue is widely shared does not deprive Congress of constitutional power to authorize its vindication in the federal courts where the harm is concrete. See Public Citizen v. Department of Justice, 491 U.S. 440, 449-450.  The informational injury here, directly related to voting, the most basic of political rights, is sufficiently concrete.  Respondents have also satisfied the remaining two constitutional standing requirements: The harm asserted is "fairly traceable" to the FEC's decision not to issue its complaint and the courts in this case can "redress" that injury. Pp. 8-14.

*FEC v. Akins*, 524 U.S. 11 (1998), (Opinion. at p. 14) the Court stated:

"As commonly understood, the Federal Election Campaign Act seeks to remedy any actual or perceived corruption of the political process in several important ways."

*FEC v. Akins*, 524 U.S. 11 (1998), (Opinion. at p. 20) the Court stated:

"Given the language of the statute and the nature of the injury, we conclude that Congress, intending to protect voters such as respondents from suffering the kind of injury here at issue, intended to authorize this kind of suit. Consequently, respondents satisfy "prudential" standing requirements. Cf. Raines v. Byrd, 521 U. S. ___, ___, n. 3 (1997)"

*FEC v. Akins*, 524 U.S. 11 (1998), (Opinion at p.21) the Court stated:

"Indeed, this Court has previously held that a plaintiff suffers an "injury in fact" when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute. Public Citizen v. Department of Justice, 491 U.S. 440, 449 (1989) (failure to obtain information subject to disclosure under Federal Advisory Committee Act "constitutes a sufficiently distinct injury to provide standing to sue"). See also Havens Realty Corp. v. Coleman, 455 U.S. 363, 373 -374 (1982)    (deprivation of information about housing availability constitutes "specific injury" permitting standing)".

The United States Constitution Article VI states, "This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land………  The Senators and Representatives before mentioned, and the members of the several state legislatures, and all executive and judicial officers, both of the United States and of the several states, shall be bound by oath or affirmation, to support this Constitution."

Furthermore, the Federal Elections Campaign Act [FECA] is supposed to protect Plaintiff and other registered voters from the fraudulent schemes involved with Federal Elections.


3.    **Plaintiff has Standing Pursuant to *8 U.S.C. §1481(b)***

Further Standing is granted to Plaintiff under *8 U.S.C. §1481(b)*, which states:

"Whenever the loss of United States nationality is put in issue in any action or proceeding commenced on or after September 26, 1961 under, or by virtue of, the provisions of this chapter or any other Act, the burden shall be upon the person or party claiming that such loss occurred, to establish such claim by a preponderance of the evidence……."

Plaintiff incorporates all previous pages as if fully set out herein. If in fact Obama ever had any type of citizenship status in the United States, he lost said status when his mother married Lolo Soetoro and became a citizen of Indonesia. In this case, Obama, could have regained his U.S. citizenship status, if any were held, however, he would have had to renounce his Indonesia citizenship, upon turning eighteen (18), which is required by Indonesia to relinquish citizenship, and take the necessary actions to regain any type of U.S. citizenship status, if any existed. Obama relinquished his United States nationality by maintaining his naturalization in Indonesia, a foreign state, after the age of eighteen (18) in violation of 8 U.S.C. §1481(a)(1), which is a voluntary expatriating act.

*Again*, as previously stated, since Obama's birth was legally Acknowledged by Lolo Soetoro, an Indonesian citizen, and/or Obama was adopted by Lolo Soetoro, which the evidence attached hereto supports, Obama became an Indonesian citizen *and bears the status as an Indonesia natural child (natural-born). For this reason, Obama would have been required to file applications with the U.S. State Department and follow the legal procedures to become a naturalized citizen in the United States, when he returned from Indonesia. If Obama and/or his family failed to follow these procedures, then Obama is an illegal alien.*

Furthermore, Obama traveled to Indonesia and Pakistan in 1981 using his Indonesian passport. Indonesian passports require renewal every five (5) years. At the time of Obama's travels, Obama was twenty (20) years old. If Obama was required to give affirmation of allegiance to Indonesia to secure his Indonesian Passport or in renewing, which is required every five (5) years, his Indonesian passport and/or traveling on said passport, Obama was giving affirmation or reaffirmation of allegiance

to Indonesia in violation of 8 U.S.C. 1401(a)(1). Taking an oath or making an affirmation or other formal declaration of allegiance to a foreign state...after having attained the age of eighteen years provides loss of nationality by native born citizens, 8 USC §1481(a)(2).

Since Obama was acknowledged by Lolo Soetoro as his son and/or was adopted by Lolo Soetoro and was a citizen of Indonesia, according to his school record attached as Exhibit "4", Obama is clearly an Indonesian citizen.


**4.      Plaintiff has Standing under *5 U.S.C. §552***

Plaintiff has standing to sue under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 et seq. (1994). Anyone denied information under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 et seq. (1994) has standing to sue regardless of his or her reasons. *Akins, Et Al. vs.. FEC*, 322 US. App. D.C. 58; 101 F.3d 731; 1996 U.S. App. LEXIS 31253 (1996), 524 U.S. 11 (1998); *Public Citizen vs. FTC*, 276 U.S. App. D.C. 222, 869 F.2d 1541(D.C. Cir. 1989).

Plaintiff has suffered an informational injury as a voter and member of the public; the lack of information on Mr. Obama's citizenship, caused by the FEC's action, limited the information available to him as a voter and impaired his ability to influence and inform the public and policymakers. If a party is denied information that will help it in making a voting decision that party is obviously injured in fact. In *Akins*, the court noted that: "[a] voter deprived of useful information at the time he or she votes suffers a particularized injury in some respects unique to him or herself just as a government contractor, allegedly wrongfully deprived of information to be made available at the time

bids are due, would suffer a particularized injury even if all other bidders also suffered an injury." Even if all individuals who voted for any of the other Democratic candidates for President, suffered the same injury that does not take away from the individual injury that Plaintiff suffered.

5. **Plaintiff has Standing Pursuant to 28 U.S.C. §1343, Civil rights and Elective Franchise**

28 U.S.C. § 1343. Civil rights and elective franchise states in pertinent part:

(a) The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: ....

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

Plaintiff has the right to secure equitable relief under 28 U.S.C. 1343(a)(3) and (4). In *Baker v. Carr*, 369 U.S. 186 (1962), federal jurisdiction arose under this section and Plaintiff had standing because his individual right to vote was affected. Like many other United States citizens, Plaintiff lost the opportunity to vote in the general election for a qualified Democratic candidate, because Obama withheld information critical to determining his ineligibility for presidency, knowing he was not a "natural born" citizen much less a citizen at all and knowing he was ineligible to serve as President of the United States. Based on Obama's fraud, people supported him instead of an eligible candidate.

6.    **Plaintiff has Standing Pursuant to Federal Question Jurisdiction**

Congress has conferred upon federal courts jurisdiction to decide *federal questions* i.e., cases or controversies arising under the Constitution and laws of the United States (**28 U.S.C. § 1331**)

Article III permits federal question jurisdiction in every case in which the laws of the United States are an "ingredient" of the suit in question. *Osborn v Bank of the United States*, 22 US 738 (1824). Under Osborn's reading of Article III, federal question jurisdiction can exist even if the federal ingredient never arises in the suit, or if it has been already decided. "Congress may confer on the federal courts jurisdiction over every case or controversy that might call for the application of federal law." *Verlinden BV v Central Bank of Nigeria*, 461 US 480 (1983).

The issues presented in Plaintiff's complaint clearly arise under the Constitution and Laws of the United States, and are a Federal Question presented.

There are no laws which specifically delegate whose responsibility it is to carry the burden of verifying the eligibility of a President. The question is who has the constitutional authority to resolve disputes regarding presidential candidates' eligibility? Our Constitution and laws are in fact, silent on how questions of presidential candidates' eligibility are resolved. The Constitution or our laws do not contain provisions on who is to make determinations of the compliance of the presidential candidate with Article II, much less that they have exclusive ability to do so. The closest we have is 2 U.S.C. §437c, if in fact illegal or fraudulent campaigning is involved.

Moreover, there are absolutely no statutes or laws which dictates how a person, such as Plaintiff, are to demand proof of our Presidential candidates eligibility in order

for Plaintiff to be able to form a proper decision on who to cast his vote for. Each entity contacted, whether Governmental or State has refused such duties, including the DNC and FEC. *Again*, the closest we have is 2 U.S.C. §437c, if in fact illegal or fraudulent campaigning is involved.

This is the first time in History these Federal questions have been presented. There is not any statutory reference or case law pertaining to such questions.

The Constitution guarantees forms of redress through our Court systems. This very Court has the inherent power to hear and resolve the Federal questions presented.

The Constitution of the United States of America is the supreme law of the United States. It provides the framework for the organization of the United States Government.

For the aforementioned reasons, Plaintiff respectfully requests this Honorable Court to deny Defendants Motion to Dismiss, Order immediate discovery, including but not limited to: 1) A certified copy of Obama's "vault" (original long version) Birth Certificate; and (2) A certified copy of Obama's Certificate of Citizenship; and (3) A certified copy of the Oath of Allegiance taken by Obama after attaining the age of majority and allow Plaintiff to amend his Complaint.


## C.  PLAINTIFF HAS PLED CAUSES OF ACTION WHERE RELIEF CAN BE GRANTED.


Defendants claim Plaintiff has failed to state claim in which federal relief can be granted. Plaintiff's Complaint under Counts 1, 2 and 3 which clearly assert Obama was born in Mombasa, Kenya and his mother was not old enough and did not meet the

residency requirements pursuant to The Nationality Act of 1940, revised June 1952 and §301(a)(7) of the INA states the U.S. citizen parent, Obama's mother,  must have resided in the U.S. for ten (10) years, five (5) of which were after the age of fourteen (14) in order to give Obama "natural born" citizenship status in the United States.  _United States of America v. Cervantes-Nava_, 281 F.3d 501 (2002), _Drozd v. I.N.S._, 155 F.3d 81, 85-88 (2d Cir.1998).

In order to determine Obama's citizenship status, the Court must look to the applicable law in effect at the time of Obama's birth. _Runnett v. Shultz_, 901 F.2d 782, 783 (9th Cir.1990) (holding that "the applicable law for transmitting citizenship to a child born abroad when one parent is a U.S. citizen is the statute that was in effect at the time of the child's birth").

Additionally, Obama's mother relocated Obama in or about 1967, when Obama was approximately five (5) or six (6) years old, when she married Lolo Soetoro, an Indonesian Citizen.  At that time, Indonesia did not allow dual citizenship.  Obama's mother became naturalized in Indonesia and Obama, being a minor, followed his mother's nationality, Nationality Act of 1940, Section 317(b).

As stated above, Obama admits in his book "_Dreams from my father_" Obama's memoir (autobiography) that after his mother and Lolo Soetoro were married, he and his mother moved to Indonesia.  Obama admits when he arrived in Indonesia he had already been enrolled in school located in Jakarta prior to his arrival.  The only way this could have occurred, is if in fact Lolo Soetoro, an Indonesian State citizen, acknowledged Obama as his son, which acknowledgement was made prior to Obama's eighteenth (18th) birthday.

Under Indonesian law, when a male acknowledges a child as his son, it deems the son, in this case Obama, as an Indonesian State citizen. Constitution of Republic of Indonesia, Law No. 62 of 1958 Law No. 12 of 2006 dated 1 Aug. 2006 concerning Citizenship of Republic of Indonesia, Law No. 9 of 1992 dated 31 Mar. 1992 concerning Immigration Affairs and Indonesian Civil Code (Kitab Undang-undang Hukum Perdata) (KUHPer) (Burgerlijk Wetboek voor Indonesie).  Republic of Indonesia Constitution 1945, as amended by the First Amendment of 1999, the Second Amendment of 2000, the Third Amendment of 2001 and the Fourth Amendment of 2002, Chapter X, Citizens and Residents, Article 26 states *"(1) Citizens shall consist of indigenous Indonesian peoples and persons of foreign origin who have been legalized [sic] as citizens in accordance with law.  (2) Residents shall consist of Indonesian citizens and foreign nationals living in Indonesia.*"

Plaintiff is informed, believes and thereon alleges Obama was adopted by his Indonesian stepfather.  Obama was registered in a public school Fransickus Assisi School in Jakarta, Indonesia under the name of Barry Soetoro, showing his citizenship as Indonesian.  The school registration is attached as **EXHIBIT "4"**.  The law on the books at that time did not allow foreign children to attend a public school in Jakarta.  The school obtained verification from the Government of the child's name and citizenship status.

Indonesia Constitution, Article 2 states "*It is stipulated that an adopted child has the same status as a natural child and that his or her relationship to the birth parents is severed by adoption.*"

Indonesia Constitution, *Article 2 states: "on the condition of ratification of the adoption by the District Court: "The law stipulates that children of mixed couples automatically assume their father's citizenship, and a divorced wife cannot take custody of her children because they have different citizenship."*

Since Obama's birth was legally Acknowledged by Lolo Soetoro, an Indonesian citizen, and/or Obama was adopted by Lolo Soetoro, which the evidence attached hereto supports, Obama became an Indonesian citizen *and bears the status as an Indonesia.*

*Dual citizenship was not allowed or permitted in Indonesia until the year 2006. The Indonesian citizenship law was designed to prevent apatride (stateless) or bipatride (dual citizenship). Indonesian regulations, at the time in question, did not recognize neither apatride nor bipatride citizenship.*

Indonesia did not allow Dual Citizenship or Dual Nationality; thus Obama is not a U.S. Citizen, he is Indonesian. Neither Obama's place of birth or the nationality of his American parent are relevant, the Indonesian Law takes precedence under *The Master Nationality Rule of Article 4 of the Hague Convention of 1930*. The United States accepts the existence of Dual Nationality <u>only</u> if the other country does. *Hague Conventions* are applied by the United States and this has been in effect since before 1930. (Memorandum on Nationality, including Statelessness: Document A/CN.4/67, prepared by Ivan S Kerno, International Law Commission, United Nations General Assembly, 6th April 1953.) Thus, Obama is not a "natural born" citizen and my not even be a naturalized citizen.

As a direct result of the Defendants actions, or lack thereof, Plaintiff's civil rights secured to him under the Fourteenth (14th) Amendment of the United States Constitution

have been affected. Plaintiff has been deprived, as stated above, money, time, billable hours and Liberty and has suffered reverse discrimination and violations of the Freedom of Information Act.

The Federal Rules of Civil Procedure require notice pleading, not fact pleading, so to withstand a Rule 12(b)(6) motion, the Plaintiff "need only make out a claim upon which relief can be granted. If more facts are necessary to resolve or clarify the disputed issues, the parties may avail themselves of the civil discovery mechanisms under the Federal Rules". _Alston v. Parker_, 363 F. 3d 229, 233 n.6 (4d Cir. 2004), quoting _Swierkiewicz v. Sorema, N.A._, 534 U.S. 506, 512 (2002) ("This simplified notice pleading standard relies on liberal discovery rules…to define facts and issues and to dispose of unmeritorious claims.")

As this Court is aware, in deciding a Motion to Dismiss pursuant to _Federal Rules of Civil Procedure_ 12(b)(6), the Court accepts the factual allegations of the Complaint as true and draws all reasonable inferences therefore in favor of the Plaintiff. _Armstrong Surgical Center, Inc. v. Armstrong County Memorial Hospital_, 185 F.3d 154, 155 (3d Cir. 1999), _Morse v. Lower Merion School District_, 132 F.3d 902, 906 (4d Cir. 1997).

In making a determination, the Court must construe the pleading in the light most favorable to the non-moving party. _Budinsky v. Pennsylvania Dept. of Environmental Resources_, 819 F.2d 418, 421 (3d Cir. 1987).

Plaintiff brought this action prior to the Democratic National Committee in attempts to have Obama removed from the ballot if he was found to be ineligible. Unfortunately, Obama was nominated as the Democratic Nominee to run and serve for the President of the United States. The relief sought in all three (3) Counts of Plaintiff's

complaint request a Declaratory relief deeming Obama ineligible to serve as President of the United States as he is not a "natural born" citizen pursuant to the United States Constitution, Article II, Section I and Injunctive Relief removing Obama from the ballot and stopping all of his campaign efforts to secure the Office of the Presidency.

For the aforementioned reasons, Plaintiff respectfully requests this Honorable Court to deny Defendants Motion to Dismiss, order immediate discovery, including but not limited to: 1) a certified copy of Obama's "vault" (original long version) Birth Certificate; and (2) a certified copy of Obama's Certificate of Citizenship; and (3) a certified copy of the Oath of Allegiance taken by Obama taken at the age of majority and allow Plaintiff to amend his Complaint.

### D.    <u>CONCLUSION</u>

Plaintiff served discovery in way of Admissions and Request for Production of Documents, on Defendants on September 15, 2008 and has attempted to obtain verification of Obama's eligibility through Subpoenas to the Government entities and the Hospital's in Hawaii.  To date, Plaintiff has not received the requested discovery from the Defendants and two (2) of the locations, which subpoenas were served upon, refused to honor the subpoena.

For the above aforementioned reasons, Plaintiff respectfully request Defendants Barack Hussein Obama and the Democratic National Committee's Motion to Dismiss pursuant to F.R.C.P. 12(b)(1) and 12(b)(6) be denied and order immediate discovery, including but not limited to: 1) a certified copy of Obama's "vault" (original long version) Birth Certificate; and (2) a certified copy of Obama's Certificate of Citizenship;

and (3) a certified copy of the Oath of Allegiance taken by Obama taken at the age of majority. If the Court is inclined to grant Defendants motion, Plaintiff respectfully requests the opportunity to amend his Complaint pursuant to the findings of this Honorable Court.

Respectfully submitted,

/s Philip J. Berg

Dated: September 29, 2008

_____
Philip J. Berg, Esquire
Attorney in pro se
555 Andorra Glen Court, Suite 12
Lafayette Hill, PA 19444-2531
(610) 825-3134

## <u>CERTIFICATE OF SERVICE</u>

I, Philip J. Berg, Esquire, hereby certify that Plaintiff's Opposition and Brief in Support thereof, to Defendants Barack Hussein Obama and the Democratic National Committee's Motion to Dismiss Plaintiff's Complaint Pursuant to *Federal Rules of Civil Procedure*, Rule 12(b)(1) and 12(b)(6) was served via electronic filing on the ECF System, this 29th day of September 2008 upon the following:

John P. Lavelle, Jr., Esquire
Attorney I.D. PA 54279
**BALLARD SPAHR ANDREWS &**
  **INGERSOLL, LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103
(215) 864-8603
(215) 864-9125 (Fax)
lavellej@ballardspahr.com

Joseph E. Sandler, Esquire
**SANDLER REIFF & YOUNG PC**
300 M Street, S.E. Suite 1102
Washington, D.C. 20003
Telephone: (202) 479-1111
Fax: (202) 479-1115
sandler@sandlerreiff.com

Robert F. Bauer, Esquire
General Counsel, Obama for America
**PERKINS COIE**
607 Fourteenth Street N.W.
Washington, D.C. 20005-2003
Telephone: (202) 628-6600
Facsimile: (202) 434-1690    Attorney's for Defendant's
RBauer@perkinscoie.com    Barack Hussein Obama and
    The Democratic National Committee

The Federal Election Commission (FEC)
999 E. Street, NW
Washington, D.C. 20463                    In pro se
Served via regular mail postage fully prepaid




Dated:  September 29, 2008

                                  /s Philip J. Berg
_____
Philip J. Berg, Esquire
Attorney in pro se
555 Andorra Glen Court, Suite 12
Lafayette Hill, PA 19444-2531
(610) 825-3134