IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHILIP J. BERG, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 08-4083 |
| BARACK OBAMA, et al. | : | |

**SURRICK, J.**                                             **OCTOBER 24, 2008**

<u>**MEMORANDUM & ORDER**</u>

Presently before the Court are the Motion of Defendant Democratic National Committee and Senator Barack Obama to Dismiss First Amended Complaint (Doc. No. 20) and the Defendant Federal Election Commission's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. No. 24). For the following reasons, the Defendants' Motions to Dismiss will be granted.

**I.      BACKGROUND**

**A.      Procedural History**

Philip J. Berg (hereinafter "Plaintiff") is an attorney who is representing himself in this matter. On August 21, 2008, just prior to the Democratic National Convention, Plaintiff filed a Complaint for Declaratory and Injunctive Relief (Doc. No. 1 ) and a Motion For Temporary Restraining Order and for Expedited Discovery (Doc. No. 2 "TRO") against Barack Obama ("Obama"), the Democratic National Committee ("DNC"), the Federal Election Commission ("FEC"), and Does 1-50 Inclusive. The Complaint and request for TRO alleged that Obama is not eligible to run for the Office of President of the United States because he is not a "natural born citizen" as required by Article II, Section 1, Clause 4 of the United States

Dockets.Justia.com

Constitution (the "Natural Born Citizen Clause"). Plaintiff sought a TRO prohibiting Obama from running for President and enjoining the DNC from selecting Obama as the nominee. Plaintiff also sought declaratory and injunctive relief in the form of a declaration that Obama is ineligible to run for the office of President under the United States Constitution and a permanent injunction enjoining Obama from running for President and enjoining the DNC from making Obama the Democratic presidential nominee.

On August 22, 2008, a hearing was held on Plaintiff's Motion for Temporary Restraining Order.[1] At the conclusion of the hearing an Order was entered denying the Motion. (Doc. No. 4.)

On September 9, 2008, service of the summons and Complaint was made on Defendants Barack Obama and the DNC. (Doc. No. 7.) On September 12, 2008, service was made on Defendant FEC. (Doc. No. 9.) On September 24, 2008, a Motion to Dismiss was filed by Barack Obama and the DNC. (Doc. No. 12.) Plaintiff's Response in Opposition to the Motion to Dismiss was filed on September 29, 2008. (Doc. No. 13.) On October 6, 2008, Plaintiff filed a Motion for Leave to File a First Amended Complaint. (Doc. No. 14.) Plaintiff's First Amended Complaint for Declaratory and Injunctive Relief ("Amended Complaint") was attached to the Motion. (Doc. No. 14-2.)[2] In addition to Defendants Barack Obama, the DNC,

---

[1] Defendants were not represented at the hearing. Plaintiff advised the Court that he had faxed a copy of the Complaint and Motion for Temporary Restraining Order as well as notice of the hearing to Defendants, but that he could not confirm that they had been received by Defendants. (Hr'g. Exs. P-1, P-2, & P-9.)

[2] Federal Rule of Civil Procedure 15(a) provides that "a party may amend its pleading once as a matter of course . . . before being served with a responsive pleading." A motion to dismiss is not a responsive pleading. The motion seeking leave to amend was unnecessary. The Amended Complaint is deemed filed.

and the FEC, Plaintiff's Amended Complaint includes the following Defendants: the Secretary of the Commonwealth of Pennsylvania Department of State, Pedro A. Cortés; Secretary of the Commonwealth in his Official Capacity; Diane Feinstein, Chairman of the U.S. Senate Commission on Rules and Administration in her Official Capacity; U.S. Senate Commission on Rules and Administration; and Does 1-50 Inclusive.[3] On October 20, 2008, a Motion of Defendant Democratic National Committee and Senator Barack Obama to Dismiss First Amended Complaint was filed. (Doc. No. 20.) On October 21, 2008 Defendant Federal Election Commission's Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Federal Rule of Civil Procedure 12(b)(1) was filed. (Doc. No. 24.)

The Amended Complaint adds claims that were not included in the original Complaint. In addition to the claim that Obama is not a "natural born citizen" and is therefore not eligible to be President, Plaintiff alleges that the Defendants have deprived him of his rights in violation of 42 U.S.C. § 1983, 42 U.S.C. § 1985, and 42 U.S.C. § 1986 (Counts Two, Three, & Four). The Amended Complaint also adds a Claim for Promissory Estoppel (Count Seven) and includes claims for violation of the Federal Election Campaign Act ("Campaign Act"), 2 U.S.C. § 437 (Count Five), violation of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (Count Six), and a Claim of Loss of Nationality under 8 U.S.C. § 1481(b) (Count Eight).[4]

## B.  Factual Background

---

[3] As of this date, there is no indication in this record that any of these newly added Defendants have been served.

[4] The claims in Counts Five, Six and Eight were not included as claims in Plaintiff's original Complaint; however, they did appear in Plaintiff's brief in opposition to the Motion to Dismiss (Doc. No. 13) as arguments in support of Plaintiff's standing to bring this lawsuit.

The Amended Complaint alleges that Plaintiff is a life-long member of the Democratic Party (Doc. No. 14-2 ¶ 3) who fears that Defendant DNC's nomination of Defendant Obama as the Democratic Party's presidential nominee for the 2008 election will result in irreparable harm to Plaintiff and other "Democratic Americans." (*Id.* ¶ 7.) Obama cannot be a presidential nominee, Plaintiff contends, because Obama is not a "natural born citizen" of the United States and is therefore barred from holding the office of President by the Natural Born Citizen Clause.[5] (*Id.* ¶ 36.)

Plaintiff claims that if the evidence shows that Obama is not a natural born citizen, his nomination (and presumably his election to the Presidency if he wins) will be null and void. (*Id.* ¶ 7.) Plaintiff asserts that Defendants' collective knowledge of this fact, or their failure to assist Plaintiff in obtaining information from Obama and the DNC, has deprived Plaintiff of "liberty, property, due process of law and equal protections of the laws," (*id.* ¶ 89), and has caused "significant disenfranchisement of the Democratic Party" generally (*id.* ¶ 173).

Various accounts, details, and ambiguities from Obama's childhood form the basis of Plaintiff's allegation that Obama is not a natural born citizen of the United States. To support his contention, Plaintiff cites sources as varied as the Rainbow Edition News Letter, (*id.* ¶ 39), and the television news tabloid *Inside Edition* (*id.* ¶ 45). These sources and others lead Plaintiff to conclude that Obama is either a citizen of his father's native Kenya, by birth there or through operation of U.S. law; or that Obama became a citizen of Indonesia by relinquishing his prior

---

[5] The Natural Born Citizen Clause reads: "No Person except a natural born Citizen, or a Citizen of the United States, at the time of the Adoption of this Constitution, shall be eligible to the Office of President . . . ." U.S. Const. art. II, § 1, cl. 5.

citizenship (American or Kenyan) when he moved there with his mother in 1967. Either way, in Plaintiff's opinion, Obama does not have the requisite qualifications for the Presidency that the Natural Born Citizen Clause mandates. The Amended Complaint alleges that Obama has actively covered up this information and that the other named Defendants are complicit in Obama's cover-up.

Plaintiff seeks the following relief from the Court:

1. An order compelling Defendants to turn over: (a) a certified copy of Obama's "vault" (original long version) birth certificate; (b) certified copies of all reissued and sealed birth certificates of Obama in the names referred to in the caption of this lawsuit; (c) a certified copy of Obama's Certification of Citizenship; (d) a certified copy of Obama's Oath of Allegiance taken upon age of majority; (e) certified copies of Obama's admission forms for Occidental College, Columbia University and Harvard Law School; and (f) certified copies of any court orders or legal documents changing Obama's name from Barry Soetoro to Barack Hussein Obama;

2. A declaration that Obama is not a natural-born citizen or naturalized citizen of the United States;

3. A declaration that Obama is ineligible to run for the President under the United States Constitution, Article II, Section 1;

4. A preliminary and permanent injunction enjoining Obama from any further campaigning and from running for President;

5. An order compelling the FEC, Feinstein and the U.S. Senate Commission on Rules and Administration to immediately open and conduct an investigation into the fraudulent tactics of Obama and immediately open and conduct an investigation into the citizenship status of Obama; and

6. A preliminary and permanent injunction enjoining the DNC, the Pennsylvania Department of State, Pedro A. Cortés, Pennsylvania Secretary of the Commonwealth, and the Bureau of Commissions, Elections and Legislation from placing Obama's name on the presidential election ballot.

## II. LEGAL STANDARD

## A.    Rule 12(b)(1) – Lack of Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(1), a court must grant a motion to dismiss if it lacks subject matter jurisdiction over the case.  Fed. R. Civ. P. 12(b)(1).  The party asserting that jurisdiction is proper bears the burden of showing that jurisdiction exists.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1045 (3d Cir. 1993).  A challenge to jurisdiction may be either factual or facial.  *See CNA v. United States*, 535 F.3d 132, 145 (3d Cir. 2008) (*citing* 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350, at 147-55 (3d ed. 2004)).  Where the challenge is facial, as Obama and the DNC's is here, courts must take the well-pleaded facts of the complaint as true and must draw all inferences in a manner most favorable to the plaintiff, as with ruling on a Rule 12(b)(6) motion to dismiss.  *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

## B.    Rule 12(b)(6) – Failure to State a Claim

When considering a motion to dismiss a complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), this Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Pinker v. Roche Holdings Ltd*., 292 F.3d 361, 374 n.7 (3d Cir. 2002).  However, "a court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss."  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citations omitted).[6]

---

[6] Obama and the DNC are the only Defendants that have moved this Court to dismiss under Rule 12(b)(6). (*See* Doc. No. 20.)  However, we evaluate Plaintiff's claims against all Defendants.  The Court "may on its own initiative dismiss the complaint for failure to state a

Thus, both the 12(b)(1) and the 12(b)(6) challenges to the Amended Complaint raise strictly legal questions. For purposes of this opinion, we take as true the well-pleaded facts of the Amended Complaint.[7]

## III. LEGAL ANALYSIS

---

claim upon which relief can be granted, pursuant to [Rule] 12(b)(6), where the inadequacy of the complaint is apparent as a matter of law." *Coggins v. Carpenter*, 468 F. Supp. 270, 279 (E.D. Pa. 1979) (*citing* 5 Wright and Miller, Federal Practice and Procedure § 1357). This practice "promotes the prompt and efficient disposition of cases and protects valuable judicial resources by expediting the dismissal of cases that lack 'a shred of a valid claim.'" *Pa. State Troopers Ass'n v. Pennsylvania*, No. 06-1079, 2007 WL 853958, at *9 (M.D. Pa. Mar. 20, 2007), *modified*, 2007 WL 1276914 (M.D. Pa. May 1, 2007) (*citing Baker v. U.S. Parole Comm'n*, 916 F.2d 725, 726 (D.C. Cir. 1990)). The court must accept all of a plaintiff's allegations as true, as we have done here. *See Bryson v. Brand Insulations, Inc.*, 621 F.2d 556, 559 (3d Cir. 1980). In addition, the court must give the plaintiff notice and an opportunity to be heard on the legal viability of his complaint. *See Dougherty v. Harper's Magazine Co.*, 537 F.2d 758, 761 (3d Cir. 1976); *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 765 (7th Cir. 2006); *see also Bethea v. Nation of Islam*, 248 Fed. Appx. 331, 333 (3d Cir. 2007) ("However, although disfavored, a . . . dismissal may stand even if the plaintiff is not provided notice and an opportunity to respond where it is clear that the plaintiff cannot prevail and that any amendment would be futile."). This notice and opportunity to be heard may be provided by the act of a single defendant who raises a defense applicable to all defendants. *See Pourghoraishi*, 449 F.3d at 765-66; *Coggins*, 468 F. Supp. at 279 (dismissing the complaint with respect to defendants who were not properly served, where other defendants had filed motion to dismiss pursuant to Rule 12(b)(6)). In the instant case, Plaintiff is on notice that Obama and the DNC raised a Rule 12(b)(6) defense applicable to all Defendants. (*See* Doc. No. 20 (discussing all counts of the Amended Complaint and alleging that "none of the additional counts contained in the Amended Complaint sets forth any viable federal cause of action").) Since the filing of the Motion to Dismiss First Amended Complaint (Doc. No. 20), Plaintiff has filed five different Motions, including a Motion for Summary Judgment. (*See* Doc. Nos. 21, 22, 25, 26 & 27). We assume that if Plaintiff wished to respond to those issues raised in the Motion to Dismiss First Amended Complaint that he did not already address in his Response in Opposition to the initial Motion to Dismiss (Doc. No. 13) he would have done so.

[7] We note that while we take Plaintiff's allegations as true for purposes of this motion (as we must), Defendants Obama and DNC characterize them as "patently false." (Doc. No. 20 at 9.)

## A.    Count One – The Natural Born Citizen Clause[8]

Defendants Obama and the DNC argue that Plaintiff does not have Article III standing to bring a challenge under the Natural Born Citizen Clause and that as a result this Court does not have jurisdiction to hear the case. That Article III "restricts the federal 'judicial Power' to the resolution of 'Cases' and 'Controversies'" is a "basic doctrinal principle." *Sprint Commc'ns. Co. v. APCC Servs.*, 128 S. Ct. 2531, 2535 (2008). The requirement that there be a case or controversy "is satisfied only where a plaintiff has standing." *Id.*

Standing can be a difficult concept for lawyers and non-lawyers alike.  The doctrine was so vague that it led Justice Douglas to quip, "[g]eneralizations about standing to sue are largely worthless as such." *Ass'n of Data Processing Serv. Org. v. Camp*, 397 U.S. 150, 151 (1970). Judge Posner has framed the topic in the following way:

> [D]esire does not create standing.  If you become indignant reading about a case of police brutality, you cannot sue the responsible officers in federal court under 42 U.S.C. § 1983, though the (immediate) victim might well have a suit; much less can you sue to force the state to conduct a referendum on police brutality, even if the referendum would alleviate your outrage at the officers' violation of federal civil rights law.  If you happen to think it a scandal that less than half the eligible voters actually vote in most American elections, still you cannot sue the government demanding that it be ordered to punish nonvoters – and you could not even if, as in some other countries, the law required people to vote.  The injury brought about by a violation of law must, to support a federal court action, be more direct and immediate than this. It must at least resemble the type of injury that would support a lawsuit under traditional principles of common law or equity; it must therefore affect one's possessions or bodily integrity or freedom of action, however expansively defined and not just one's opinions, aspirations, or ideology. It must in short be fairly describable as an injury personal to the plaintiff – a deprivation of his right – rather than a concern with another's injury.

_____

[8]  Because we dispose of Count One on jurisdictional grounds, we need not address whether Plaintiff can state a claim for relief under the Natural Born Citizen Clause.  *See Ibraimi v. Chertoff*, No. 07-3644 (DMC), 2008 U.S. Dist. LEXIS 61406, at *12 (D.N.J. Aug. 11, 2008).

. . . .

> [I]f you have no right to demand assistance the failure to assist you is not an injury that will support a federal suit, even though such a failure may make the rights you do have, which include the right of political advocacy, less fruitful in achieving your goals.

*People for Organized Welfare and Employment Rights v. Thompson*, 727 F.2d 167, 171-72 (7th Cir. 1984) (Posner, J.) (citations omitted).

The Supreme Court has clarified the doctrine since Justice Douglas's time. It is now clear that standing is an "irreducible constitutional minimum" that has three elements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see also Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 290-91 (3d Cir. 2005) (employing *Lujan*'s three-pronged test). First, a party must have experienced an injury in fact: "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations and quotation marks omitted). Second, there must be a causal connection between the injury in fact and the defendant's conduct that is "fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court." *Id.* at 560-61 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)). Third, a favorable decision must be likely to redress the complained of injury. *Lujan*, 504 U.S. at 561 (citations omitted). Where a plaintiff cannot establish each of the three elements, the plaintiff does not have standing and the court therefore does not have jurisdiction over the case and cannot rule on the merits. *See Goode v. City of Phila.*, 539 F.3d 311, 327 (3d Cir. 2008) ("[O]nce the District Court determined that [plaintiffs] did not have standing, it necessarily determined that it did not have jurisdiction and thus it could not decide the merits of the case.").

The Supreme Court has

> consistently held that a plaintiff raising only a generally available grievance about
> government – claiming only harm to his and every citizen's interest in proper
> application of the Constitution and laws, and seeking relief that no more directly and
> tangibly benefits him than it does the public at large – does not state an Article III
> case or controversy.

*Lujan*, 504 U.S. at 573-74. These decisions include the somewhat rare cases that have reached

the Supreme Court where plaintiffs allege constitutional harms (other than taxpayer standing

under the Establishment Clause of the First Amendment) that affect broadly-defined groups of

citizens or voters. *See Lance v. Coffman*, 127 S. Ct. 1194, 1198 (2007) (per curiam) (holding

that Colorado voters did not have standing under the Elections Clause of the Constitution, art. I,

§ 4, cl. 1, to challenge a provision of the Colorado constitution limiting the state's congressional

redistricting to once per census); *Ex parte Levitt*, 302 U.S. 633, 633 (1937) (per curiam) (holding

that a citizen did not have standing to challenge appointment of Hugo Black to the Supreme

Court under the Constitution's Ineligibility Clause, art. I, § 6, cl. 2); *see also Schlesinger v.

Reservists Comm. to Stop the War*, 418 U.S. 208, 220-21 (1976) (holding that an anti-war group

did not have standing to invoke the Incompatibility Clause, art. II, § 6, cl. 2, to have members of

Congress stricken from the Armed Forces Reserve List); *United States v. Richardson*, 418 U.S.

166, 179 (1974) (holding that a taxpayer did not have standing to obtain information about the

expenditures of the Central Intelligence Agency under the Constitution's Accounts Clause, art I,

§ 9, cl. 7).

Standing has been a consistent barrier to lower courts hearing generalized,

undifferentiated claims by voters and citizens. *See Crist v. Comm'n on Presidential Debates*,

262 F.3d 193, 194 (2d Cir. 2001) (per curiam) (affirming trial court's determination that voter

did not have standing to challenge policy of non-profit corporation responsible for organizing presidential debates); *Becker v. FEC*, 230 F.3d 381, 389-90 (1st Cir. 2000) (holding that supporters of presidential candidate Ralph Nader did not have standing to challenge FEC's debate regulations under which Nader experienced the alleged harm); *Gottlieb v. FEC*, 143 F.3d 618, 620-22 (D.C. Cir. 1998) (holding that voters, among others, did not have standing to challenge FEC's decision to dismiss an administrative complaint alleging violations of the Campaign Act); *Jones v. Bush*, 122 F. Supp. 2d 713, 716-18 (N.D. Tex. 2000) (holding that voters did not have standing to seek injunctive relief under the Twelfth Amendment to prevent Texas members of the Electoral College from casting votes for both George W. Bush and Dick Cheney).[9]  Most recently, in a well-reasoned and concise opinion, Judge Laplante of the District of New Hampshire ruled on a question very similar to the one before us and determined that

---

[9] This is not to say that voters never have standing to challenge practices that restrict their rights as voters. *See, e.g.*, *Bullock v. Carter*, 405 U.S. 134, 143-44 (1992) (allowing voters to intervene in suit challenging the constitutionality of prohibitively expensive filing fees that kept voters' desired candidates off the ballot where the fees in question had a "real and appreciable impact on the exercise of the franchise").  At first blush what concerned the Supreme Court in *Bullock* appears to be present here:  Plaintiff argues that if Obama is permitted to run and is subsequently shown to be ineligible, voters will be denied their "right" to vote for an eligible candidate.  (Doc. No. 13 at 17.)  However, upon further review, it becomes apparent that there are stark differences between Plaintiff's position and the position of the voters in *Bullock*.

In *Bullock*, the plaintiffs (both voters and aspiring candidates) challenged the constitutionality of filing fees whose expense kept aspiring candidates off the ballot. *Bullock*, 405 U.S. at 135.  The Supreme Court held that the filing fees were an unconstitutional legislative barrier that kept otherwise legitimate, aspiring candidates from appearing on the ballot.  Thus, state action, in the form of a statute, prevented voters from voting for legitimate candidates of their choice.  That concern is not present here.

Moreover, the Court in *Bullock* did not limit or in any way invalidate votes that had already been cast; nor did it void the results of the elections that had taken place. *See id.* at 136-37, 149 (affirming trial court's permanent injunction of the filing fee law).  By contrast, Plaintiff would have us derail the democratic process by invalidating a candidate for whom millions of people voted and who underwent excessive vetting during what was one of the most hotly contested presidential primary in living memory.

voters do not have standing to bring a claim under the Natural Born Citizen Clause to exclude a candidate from the presidential primaries. *See Hollander v. McCain*, No. 08-0099, 2008 U.S. Dist. LEXIS 56729 (D.N.H. July 24, 2008).

      *1.*     *Plaintiff Does Not Have Standing*

"[A] voter fails to present an injury-in-fact when the alleged harm is abstract and widely shared or is only derivative of a harm experienced by a candidate." *Crist*, 262 F.3d at 193; *Jones*, 122 F. Supp. 2d at 717 (holding that harm experienced by "Plaintiff[s] *and all other American citizens*" was too "undifferentiated and general nature" to confer standing on voters) (emphasis in original). The alleged harm to voters stemming from a presidential candidate's failure to satisfy the eligibility requirements of the Natural Born Citizen Clause is not concrete or particularized enough to constitute an injury in fact sufficient to satisfy Article III standing. *See Hollander*, 2008 U.S. Dist. LEXIS 56729, at *12 (noting that such harm "would adversely affect only the generalized interest of all citizens in constitutional governance") (citations omitted).

*Hollander* and *Jones* are instructive. In *Hollander*, the plaintiff alleged that the Republican party primary candidate, John McCain,[10] was ineligible to be President because he was born in the Panama Canal Zone and, therefore, was not a "natural born citizen" as that term is used in the Natural Born Citizen Clause. *Hollander*, 2008 U.S. Dist. LEXIS 56729 at *2-9. The plaintiff believed that if the Republican National Committee were permitted to nominate McCain, and McCain were subsequently found ineligible to run for President, then plaintiff and "100 million additional voters" would be disenfranchised. *Id.* at *7-8. The district court ruled that the plaintiff did not have standing because the harm plaintiff alleged was too generalized.

---

[10] John McCain has since secured the Republican Party's nomination for President.

*Id.* at *12.

In *Jones*, the plaintiffs alleged that George W. Bush and Dick Cheney were both inhabitants of Texas and that members of the Electoral College from Texas could not cast votes for both of them in the 2000 presidential election because of the Twelfth Amendment's requirement that Electors "shall . . . vote by ballot for President and Vice-President, one of whom, at least, shall not be an inhabitant of that same state with themselves." *Jones*, 122 F. Supp. 2d at 715 (*quoting* U.S. Const. amend. XII). The plaintiffs claimed their status as voters was sufficient to confer standing. *Id.* According to the plaintiffs, by casting ballots for both Bush and Cheney, the Texas Electors would be "infringing [plaintiffs'] right to cast a meaningful vote." *Id.* at 717. The court found plaintiffs' alleged harm insufficient to establish standing because it was not a "particularized, palpable injury." *Id.*

Plaintiff's allegations of harm in the instant case suffer from the same fundamental flaws as the plaintiffs' allegations in *Hollander* and *Jones*: Plaintiff's stake is no greater and his status no more differentiated than that of millions of other voters. Plaintiff acknowledges as much in the Amended Complaint when he avers that he and "other Democratic Americans" (Doc. No. 14-2 ¶ 7) will experience irreparable harm.[11] This harm is too vague and its effects too attenuated to confer standing on any and all voters. *See Becker*, 230 F.3d at 390 (holding that voter-

---

[11] One substantive problem with Plaintiff's disenfranchisement theory is that it is unlikely that "the removal of an elected official by non-electoral means amounts to 'disenfranchisement' of the voters who put him there." *Hollander*, 2008 U.S. Dist. LEXIS 56729, at *17 (*citing Powell v. McCormack*, 395 U.S. 486, 547 (1969)); *see also id.* at *18-*19 n.7 ("There is also the question of whether the 'disenfranchisement' resulting from a vote for an ineligible candidate is [a] sort of 'self-inflicted' harm caused by the voter, rather than any state actor, which therefore does not amount to an infringement of the franchise right." (*citing* 1 Lawrence H. Tribe, American Constitutional Law § 13-24, at 1122-23 (2d ed. 1988)).

plaintiffs' "concern for corruption of the political process 'is not only widely shared, but is also of an abstract and indefinite nature,' comparable to the 'common concern for obedience to law'" (*quoting FEC v. Akins*, 524 U.S. 11, 23 (1998))).

The party asserting that jurisdiction is proper must establish each of the elements established by the Supreme Court in *Lujan*. 505 U.S. at 561 ("Since [elements of standing] are not mere pleading requirements but rather an indispensable part of the plaintiff's case, *each* element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof . . . .") (emphasis added). Failure to establish any of the elements leaves the plaintiff without standing. Plaintiff does not, and we believe cannot, establish an injury in fact. Therefore, he does not have standing to pursue this matter and we do not have jurisdiction to hear it.

### 2. *Plaintiff's Standing Arguments are Unpersuasive*

Plaintiff attempts to establish standing on several additional grounds, but his arguments do not solve the fundamental problem that the harm he alleges does not constitute an injury in fact. His most reasonable arguments attempt to distinguish *Hollander*. (Doc. No. 13 at 16-17.) For example, he asserts that the harm he has experienced is sufficient to constitute an injury in fact under *Akins* (*id.* at 18-22). However, Plaintiff ventures into the unreasonable with arguments based on a number of federal statutes (*id.* at 17-18, 22-27). We give consideration to each argument.

### (a) *Hollander v. McCain*

In an effort to establish standing, Plaintiff attempts to distinguish *Hollander* on four grounds. First, he asserts that the plaintiff in *Hollander* challenged McCain's candidacy at the

14

primary stage, and thus McCain's alleged ineligibility was "hardly a restriction on voters' rights." (*Id.* at 16.) By contrast, Plaintiff argues that Obama is now a candidate in the general election, which "prevents citizens from voting for Hillary Clinton despite her immense popularity." (*Id.* at 16-17.) Plaintiff is correct that the narrow issue in *Hollander* was the inclusion of an allegedly ineligible candidate in a primary field of multiple (presumptively) eligible candidates. *See* 2008 U.S. Dist. LEXIS 56729, at *13-14. Whereas a Republican in New Hampshire could vote for any one of twenty-one Republican candidates in the primary (*id.* at *16 n.6), Plaintiff, as a life-long Democrat, arguably faces a Hobson's choice in the general election: Obama or nothing. Thus, we do not expect Plaintiff to take solace in the *Hollander* court's admonition that "McCain's candidacy for the presidency, whatever his eligibility, is 'hardly a restriction on voters' rights' because it in no way prevents them from voting for somebody else." *Id.* at *14 (citation omitted).

That does not mean, however, that Plaintiff has experienced an injury in fact. The plaintiff and the court in *Hollander* specifically contemplated McCain winning his party's nomination:

> Unlike [plaintiff's] other "disenfranchisement" theory, this one does not depend on the failure of his chosen candidate *because of* McCain's alleged ineligibility, but on the success of [plaintiff's] chosen candidate – who is McCain in this scenario – *despite* his alleged ineligibility. On this theory, however, [plaintiff's] alleged "disenfranchisement" flows not from the actions he has challenged here, *i.e.*, McCain's presidential campaign or the RNC's likely selection of him as its nominee, but from his subsequent removal from office at the hands of someone else (presumably one of the co-equal branches), resulting (presumably, yet again) in a President different from the one [plaintiff] helped to elect.

*Id.* at *17-18 (emphasis in original).[12]  The court found that the plaintiff still could not meet the standing requirements on causation grounds; the harm experienced was not traceable to the defendants' conduct "but to the conduct of those – whoever they might turn out to be – responsible for ultimately ousting McCain from office."  *Id.*

We agree that such causation considerations pose an impediment to a plaintiff obtaining standing in this context, but we also believe that, regardless of questions of causation, the grievance remains too generalized to establish the existence of an injury in fact.  To reiterate: a candidate's ineligibility under the Natural Born Citizen Clause does not result in an injury in fact to voters.[13]  *Cf. Lance*, 127 S. Ct. at 1198 (voters did not allege harm sufficient to invoke the Elections Clause); *Ex parte Levitt*, 302 U.S. 633, 633 (citizen could not articulate harm under the Ineligibility Clause).  By extension, the theoretical constitutional harm experienced by voters

_____

[12] Plaintiff's argument that Obama's nomination will deny him "the constitutional right to vote for an eligible candidate" is the same as the argument that the plaintiff made in *Hollander*. (Doc. No. 13 at 17.)  The fact that the plaintiff in *Hollander* called the harm "disenfranchisement" and Plaintiff identifies it as a constitutional right to vote for an eligible candidate is a distinction without a difference.  Indeed, Plaintiff does not appear to distinguish between the two terms.  (*Compare* Doc. No. 13 at 17 *with* Doc. No. 14-2 ¶ 173 (alleging disenfranchisement will result from Obama's nomination and election).)

[13] We find Chief Justice Burger's observation in *Richardson* pertinent here:

It can be argued that if respondent is not permitted to litigate this issue, no one can do so.  In a very real sense, the absence of a particular individual or class to litigate these claims gives support to the argument that the subject matter is committed to the surveillance of Congress, and ultimately to the political process.

418 U.S. at 179.  If, through the political process, Congress determines that citizens, voters, or party members should police the Constitution's eligibility requirements for the Presidency, then it is free to pass laws conferring standing on individuals like Plaintiff.  Until that time, voters do not have standing to bring the sort of challenge that Plaintiff attempts to bring in the Amended Complaint.

does not change as the candidacy of an allegedly ineligible candidate progresses from the primaries to the general election.

Plaintiff's second attempt to distinguish *Hollander* folds into his first. He argues that because he is denied his constitutional right to vote for an eligible candidate, his harm is more particularized than the plaintiff's in *Hollander*. (*See* Doc. No. 13 at 17.) As we explained above, however, there is no meaningful distinction between the harm alleged here and the harm alleged in *Hollander*.

Plaintiff's third and fourth arguments are factual in nature. He argues that the harm created by Obama's ineligibility is a result of subterfuge and fraud by Obama as opposed to the situation in *Hollander* where there was no substantive dispute about where McCain was born. (*Id.*) He also claims that Defendants – presumably in their Motion to Dismiss – "have failed to show that Mr. Obama is 'unquestionably an American citizen.'" (*Id.* (*quoting Hollander*, 2008 U.S. Dist. LEXIS 56729, at *3).) These distinctions fail to take into account the procedural posture of the case here and in *Hollander*. We have taken Plaintiff's factual allegations as true and drawn all inferences in his favor. The court in *Hollander* operated under the same standard. *Hollander*, 2008 U.S. Dist. LEXIS 56729, at *2. Raising these factual discrepancies is unavailing to Plaintiff.

(b)     Statutory standing arguments

Plaintiff also attempts to obtain standing to bring his Natural Born Citizen Clause claim under the Campaign Act, 2 U.S.C. § 431 *et seq*.; the Administrative Procedure Act ("APA"), 5 U.S.C. § 702; the Immigration and Nationality Act, 8 U.S.C. § 1481(b); FOIA, 5 U.S.C. § 552; 28 U.S.C. § 1343; and 28 U.S.C. § 1331. Plaintiff cites no authority under which any of these

statutes would confer standing on him to bring his Natural Born Citizen Clause claim and we are aware of none. We therefore find that Plaintiff's attempt to use these statutes to gain standing to pursue his Natural Born Citizen Clause claim are frivolous and not worthy of discussion. Plaintiff avers violations of some of these statutes as freestanding causes of action in the Amended Complaint. We address the merit of those causes of action below.

**B.      Counts Two, Three, & Four – Civil Rights Violations, 42 U.S.C. § 1983, 42 U.S.C. § 1985, and 42 U.S.C. § 1986**

The Amended Complaint alleges deprivation of Plaintiff's civil rights in violation 42 U.S.C. § 1983 (Count Two), 42 U.S.C. § 1985 (Count Three), and 42 U.S.C. § 1986 (Count Four). The DNC and Obama argue that Plaintiff has failed to properly allege a deprivation of his constitutional or statutory rights by state action and has failed to properly allege a conspiracy. We address each of Plaintiff's claims in turn.

*1.      42 U.S.C. § 1983*

Plaintiff makes several allegations that he believes entitle him to § 1983 relief. First, he claims that he "has been deprived of money and billable hours by fraudulent means as a result of donating money and billable hours to secure, as promised, an eligible Democratic candidate for Office of the President . . . [and that he] has been deprived of his right to vote for an eligible Democratic Nominee for the U.S. Office of the President." (Doc. No. 14-2 ¶ 93.) Second, he claims that he has been a victim of racial animosity perpetrated by Obama's supporters, including being labeled in public as a racist for bringing this suit. (*Id.* ¶¶ 94-99.) Third, he claims that Defendants are "attempting to change our United States Constitution without proper due process of law by allowing Obama to continue his campaign . . . ." (*Id.* ¶ 100.) Fourth, he claims that his "Life, Liberty and Property rights guaranteed by the Fourteenth Amendment of

18

the U.S. Constitution will further be violated if Obama is allowed to be voted into the position of President . . . ." (*Id.* ¶ 101.)  Finally, he claims that all the Defendants (other than Obama) have damaged Plaintiff by failing to act in their official capacities to stop Obama from running.  (*Id.* ¶¶ 104-08.)

> Section 1983 protects civil rights.  It creates a cause of action against
>
> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.

42 U.S.C. § 1983.  A § 1983 claimant must allege violations of "rights independently 'secured by the Constitution and laws' of the United States."  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002).  "One cannot go into court and claim a 'violation of § 1983' – for § 1983 by itself does not protect anyone against anything."  *Id.* (*citing Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979)).  We therefore must inquire into whether Plaintiff has alleged a violation of a right that would entitle him to redress under § 1983.

The irreducible basis of all Plaintiff's alleged violations is that Obama might be elected to the Office of President despite being constitutionally ineligible under the Natural Born Citizen Clause.  This alleged fact underscores his claim that he has been deprived of money and billable hours, his claim that he has been insulted in public, his claim that he is being deprived of a chance to vote for an eligible candidate, his claim that he will be deprived of life, liberty and property, and his claim that the non-Obama Defendants are causing him harm by not stopping Obama.  The question, therefore, is straightforward:  Does the Natural Born Citizen Clause create a federal right the violation of which results in a cognizable § 1983 claim?  We think not.

After a diligent search, we have been unable to find any cases that address the matter and the parties have not offered any. However, other courts have addressed the application of § 1983 in analogous situations. *See, e.g.*, *Dennis v. Higgins*, 498 U.S. 439 (1991) ("The Supremacy Clause . . . is 'not a source of any federal rights'; rather, it '"secure[s]" federal rights by according them priority whenever they come in conflict with state law.'" (*citing Chapman*, 441 U.S. at 613)); *White Mountain Apache Tribe v. Williams*, 810 F.2d 844, 848 (9th Cir.) (amended opinion), *cert. denied*, 479 U.S. 1060 (1987) ("[T]he Supremacy Clause, standing alone, secures federal rights only in the sense that it establishes federal-state priorities; it does not create individual rights, nor does it secure such rights within the meaning of 42 U.S.C.S. § 1983."); *Maryland Pest Control Ass'n. v. Montgomery County*, 884 F.2d 160 (4th Cir. 1989) (same); *Gerling Global Reinsurance Corp. of Am. v. Garamendi*, 400 F.3d 803, 811 (9th Cir. 2004) (Graber, J., concurring) ("[T]he foreign affairs power, like the Supremacy Clause, creates no individual rights enforceable under 42 U.S.C. § 1983."). Like the Supremacy Clause and the foreign affairs powers, the Natural Born Citizen Clause does not confer an individual right on citizens or voters. Therefore, Plaintiff cannot state a cognizable § 1983 claim.[14]

---

[14] State action is also a necessary element of a § 1983 claim. *See Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141-45 (3d Cir. 1994) (discussing state action requirement). While we do not need to reach this question because Plaintiff does not allege the violation of any legally protected right, we note that he would likely have difficulty showing that either Obama or the DNC are state actors or acting under color of law. We have found no cases where a presidential candidate has been treated as a state actor merely for running for office. To the contrary, the few cases that we have found suggest that presidential candidates are not state actors or engaged in state action for purposes of § 1983. *See, e.g.*, *Fulani v. McAuliffe*, No. 04-6973, 2005 U.S. Dist. LEXIS 20400, at *17 (S.D.N.Y. Sept. 19, 2005) (dismissing § 1983 claim against defendants, including the DNC and 2004 presidential candidate John Kerry, because they were not "acting under color of state law"); *Riches v. Giambi*, No. 07-0623, 2008 U.S. Dist. LEXIS 53123, at *20 (N.D. Cal. Jan. 2, 2008) (dismissing § 1983 claim against 2008 Republican presidential candidate Mike Huckabee because he was a private individual). The claim that the DNC is not a

2.     42 U.S.C. § 1985

The facts that Plaintiff alleges in support of his 42 U.S.C. § 1985 claim are substantively the same as the facts he alleges in support of his § 1983 claim.[15]  (*See* Doc. No. 14-2 ¶¶ 110-22.) He believes that the Defendants are promoting and assisting Obama's candidacy knowing that Obama is ineligible to take office.  Plaintiff avers that Defendants' conduct amounts to a conspiracy in violation of § 1985.  He does not, however, indicate the sub-section of § 1985 on which he premises his claim.

As a preliminary matter, where there is no federal right that creates a basis for a § 1983 claim there is similarly no basis for a § 1985 claim.  *See Escamilla v. Santa Ana*, 606 F. Supp. 928, 934 (C.D. Cal. 1985) (granting summary judgment to defendants on plaintiff's § 1985 and § 1986 claims where plaintiff could not establish a § 1983 claim); *Wiggins v. Hitchens*, 853 F. Supp. 505, 510 (D.D.C. 1994) ("There can be no recovery under section § 1985(3) absent a violation of a substantive federal right.").  This alone stands as an impediment to Plaintiff stating a cognizable § 1985 claim.

_____

state actor or acting under color of state law in conducting a presidential campaign is slightly more ambiguous, but the more recent cases appear to conclude that the DNC is not a state actor. *See Larouche v. Fowler*, 152 F.3d 974, 990 (D.C. Cir. 1998) ("If a party must produce the nation's 'uncontested choice' for President of the United State to qualify as a state actor, the Democratic (or Republican) Party plainly does not qualify"). *But cf. Lynch v. Torquato*, 343 F.2d 370, 372 (3d Cir. 1965) ("The people, when engaged in primary and general elections for the selection of their representatives in government, may rationally be viewed as the 'state' in action, with the consequence that the organization and regulation of these enterprises must be such as accord each elector equal protection of the laws.").

[15] Plaintiff makes additional claims about Obama and his campaign "abus[ing] their position and the law for intimidation purposes to stop people from free speech when the speech includes criticism or questioning of Obama . . . ."  (Doc. No. 14-2 ¶ 115.)  The Amended Complaint makes no attempt to allege facts in support of these claims, which standing on their own are nothing more than conclusory allegations.

Moreover, none of the § 1985 clauses apply here. Section 1985(1) deals with interference with officers of the United States, and Plaintiff has not alleged that he is an officer of the United States. *See Silo v. City of Phila.*, 593 F. Supp. 870, 873 (E.D. Pa. 1984). Section 1985(2) "creates a claim for conspiracy to intimidate witnesses, jurors, or parties in a federal case." *Id.* Plaintiff has made no allegations that would support such a claim. That leaves § 1985(3). A claim under § 1985(3) arises when:

> (1) two or more persons conspire to deprive any person of the equal protection of the law; (2) one or more of the conspirators performs or causes to be performed any overt act in furtherance of the conspiracy; and (3) that overt act injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a citizen of the United States.

*Barnes Found. v. Twp. of Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001). In addition, § 1985(3) "requires allegation of 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. . . .'" *Silo*, 593 F. Supp. at 873 (*citing Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).

We do not reach an analysis of the three elements of § 1985(3) because Plaintiff has made no allegations that the purported conspiracy is motivated by racial animus.[16] Instead, the Amended Complaint is focused entirely on an alleged conspiracy to conceal Obama's true nationality. Therefore, Plaintiff cannot state a cognizable § 1985 claim.

### 3. 42 U.S.C. § 1986

It is well settled that "[a] plaintiff must establish a valid § 1985 claim in order to state a

---

[16] We note that the Amended Complaint alleges that Obama's supporters have made racially charged remarks (*see* Doc. No. 14-2 ¶ 94) and that Obama "is furthering racial tension" (*see id.* ¶ 96), but there are no factual allegations whatsoever that tie any Defendant to any racially motivated tortious conduct of the sort § 1985 was intended to redress.

claim under § 1986." *Carrington v. City of Jersey City*, No. 06-5367, 2008 U.S. Dist. LEXIS 38808, at *19 (E.D. Pa. May 12, 2008) (*citing Clark v. Clabaugh*, 20 F.3d 1290 (3d Cir. 1994)). Since the Amended Complaint does not articulate a cognizable § 1985 claim, Plaintiff's § 1986 claim must fail as well.

### C.     Count Five – Campaign Act Claims, 2 U.S.C. § 431 *et seq.*

Count Five of the Amended Complaint alleges a violation of the Campaign Act.  2 U.S.C. § 431 *et seq.*  Specifically, it alleges that "[t]he DNC, FEC, Feinstein and the U.S. Senate Commission on Rules and Administration" are aware of "Obama's illegal activities, encouraging racial tension, encouraging violence, his fraudulent campaigning, fraudulently attempting to secure the position of President of the United States." (Doc. No. 14-2 ¶ 139.)  Despite this knowledge, these Defendants "have allowed Obama's illegal and fraudulent campaign, [through] which Obama has received in excess of $450 Million in donations."  (Doc. No. 14-2 ¶ 141.) Plaintiff argues that this entitles him to the information regarding Obama that he seeks in the Amended Complaint.

The Amended Complaint does not allege any facts regarding Plaintiff's attempts to obtain the information he seeks by means of the Campaign Act.  However, Plaintiff's Opposition informs us that he "complained" to the FEC prior to instigating his current suit and that the FEC has "completely ignored" him.  (Doc. No. 13 at 18.)  Although Plaintiff alleged these facts in his Opposition and not in the Amended Complaint, in the interest of rendering a decision that addresses Plaintiff's arguments, we will construe the allegations in a light most favorable to Plaintiff and treat the Amended Complaint as if it had alleged that the FEC failed to act on an administrative complaint.

Congress has charged the FEC with administering the Campaign Act, 2 U.S.C. § 437c(b). "As commonly understood, the [Campaign Act] seeks to remedy any actual or perceived corruption of the political process . . . ." *Akins*, 524 U.S. at 14. The Campaign Act confers standing on "[a]ny person who believes a violation of this Act or of chapter 95 or chapter 96 of the Internal Revenue Code of 1954 has occurred" to file an administrative complaint with the FEC. 2 U.S.C. § 437g(a)(1). When the FEC fails to act on an administrative complaint, as Plaintiff seems to argue here, a party may file a suit in district court.[17] 2 U.S.C. § 437g(a)(8); *Stockman*, 138 F.3d at 153, 156 n.18 (5th Cir. 1998) (noting that § 478g(a)(8) is the only private remedy afforded by the Campaign Act). There are, however, two fatal flaws with Plaintiff's theory: one procedural and one substantive.

First, if the FEC failed to act on a complaint filed by Plaintiff, this is the wrong court to hear the action. The Campaign Act specifically requires that grievances regarding the FEC's failure to enforce the Act must be filed in the District Court for the District of Columbia. 2 U.S.C. § 437g(a)(8); *Beam v. Gonzales*, 548 F. Supp. 2d 596, 611-12 (N.D. Ill. 2008) ("[T]he only FECA provision empowering private parties to seek judicial review extends to administrative complainants . . . . Even if such a suit were proper [here], FECA would require that it be brought in the United States District Court for the District of Columbia.").

Second, neither the Amended Complaint nor the Opposition identifies a specific

---

[17] If we have extended Plaintiff too favorable an inference and he in fact did not file an administrative complaint, then he lacks standing to pursue the theory outlined in his Amended Complaint because section 437d(e) of the Campaign Act provides that "the power of the [FEC] to initiate civil actions . . . shall be *the exclusive* civil remedy for the enforcement of the provisions of this Act." 2 U.S.C. § 437d(e) (emphasis added). *See also Stockman*, 138 F.3d at 152 ("The [Campaign Act] provides a strong basis for scrupulously respecting the grant by Congress of 'exclusive jurisdiction' to the FEC . . . .").

provision of the Campaign Act that entitles Plaintiff to information concerning Obama's citizenship. Instead, Plaintiff relies on generalized arguments about political corruption and the purpose of the Campaign Act. (*See* Doc. No. 13 at 20-22.) Congress intended the Campaign Act to combat the corrupting influence of money on the political process. *See Karl Rove & Co. v. Thornburgh*, 39 F.3d 1273, 1281 (5th Cir. 1994) ("The primary purpose of [the Campaign Act] . . . is to regulate campaign contributions and expenditures in order to eliminate pernicious influence – actual or perceived – over candidates by those who contribute large sums . . . ." (footnote omitted)). It seems clear that the Campaign Act does not address the sort of corruption that Plaintiff alleges in his Complaint. Nevertheless, Plaintiff cites to the Supreme Court's decision in *Akins*, 524 U.S. 11 *passim*, to support his claim of standing. (*See* Doc. No. 13 at 20-22.) Reliance on *Akins*, however, merely accentuates the problems with Plaintiff's argument.

*Akins* involved a challenge by voters to the FEC's determination that the American Israel Public Affairs Committee ("AIPAC") was not a "political committee" within the meaning of the Campaign Act. 524 U.S. at 13. The effect of this determination was to shield AIPAC from the Campaign Act's disclosure requirements and deprive plaintiffs of information regarding, among other things, AIPAC's lobbying activities. *Id.* at 15-16. On certiorari, the Supreme Court addressed whether the plaintiffs (respondents) had "standing to challenge the [FEC's] decision not to bring an enforcement action in this case." *Id.* at 18. In holding that the plaintiffs did have standing, the Court determined that "[t]he 'injury in fact' that [plaintiffs] have suffered consists of their inability to obtain information – lists of AIPAC donors (who are, according to AIPAC, its members), and campaign-related contributions and expenditures – that, on [plaintiffs'] view of the law, the statute requires that AIPAC make public." *Id.* at 21. Plaintiff reasons that he has

standing because his request for information is analogous to the plaintiffs in *Akins*. (*See* Doc. No. 13 at 21-22.)

Plaintiff's argument has superficial appeal, but does not take into account the underlying consideration in *Akins* that was necessary to the Supreme Court's determination. There, plaintiffs sought disclosures that were required by the Campaign Act. *See Akins*, 524 U.S. at 16. Here, the Campaign Act does not require Defendants to disclose the sort of information that Plaintiff seeks in the Amended Complaint. Accordingly, even if Plaintiff had followed the proper administrative procedure, Plaintiff still would face an insurmountable obstacle to obtaining the information he now seeks through the courts. *See Gottlieb*, 143 F.3d at 620-21 (holding that voters did not have standing to challenge "supposed injury to their 'ability to influence the political process'" because such a claim was too vague to constitute an injury in fact – even where voters had followed the appropriate procedure under § 437g(a)(8)). If Congress had intended the Campaign Act to require presidential candidates to make public disclosures of the sort that Plaintiff requests here – and therefore expose candidates to legal challenges permitted by the broad grant of standing pursuant to § 437g(a)(1) of the Act – then it would have done so explicitly.

**D.    Count Six – Freedom of Information Act, 5 U.S.C. § 552 *et seq.***

In Count Six of the Amended Complaint, Plaintiff alleges violations of FOIA. 5 U.S.C. § 552 *et seq*. The gravamen of Plaintiff's allegation is that he "attempted to secure documents proving the citizenship status of Obama from Obama[,] the FEC, DNC, Feinstein, [and the] U.S. Senate, Commission on Rules and Administration," but "has been refused." (Doc. No. 14-2 ¶ 146.) Plaintiff's allegation fails to state a claim under FOIA for at least three reasons.

First, FOIA applies only to government agencies. Here, all but one of the Defendants are not government agencies as Congress has defined them. Under FOIA, "[e]ach agency shall make available for public inspection and copying" certain government records. 5 U.S.C. § 552(a)(2). Congress defined the term "agency" under FOIA to include:

> any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency.

*Id.* at § 552(f)(1) (emphasis added). Congress is not subject to FOIA. *Id.* at § 551(1) (noting that for purposes of FOIA, the term agency "does not include the Congress."). Defendants Obama, the DNC, Feinstein, and the U.S. Senate, Commission on Rules and Administration are not federal executive departments. *See id.* at § 552(f)(1). They are not independent regulatory agencies. *Id.* Indeed, they are not even in the executive branch. *Id.* Accordingly, Plaintiff cannot state a claim against them under FOIA.[18] *See, e.g.*, *Sweetland v. Walters*, 60 F.3d 852, 855 (D.C. Cir. 1995) (affirming dismissal of FOIA complaint where the plaintiff sought records from an entity that "was not an agency"); *St. Michael's Convalescent Hosp. v. State of*

---

[18] Plaintiff does not assert that he "attempted to secure documents" under FOIA from Defendant Cortés, the Secretary of the Commonwealth of Pennsylvania. Even if he had, such an allegation would not state a claim. Defendant Cortés is an official of a Pennsylvania state agency. State agencies and officials are not subject to FOIA. *See Dunleavy v. New Jersey*, 251 Fed. App'x 80, 83 (3d Cir. 2007) (unpublished opinion) ("FOIA does not impose [an] obligation on state agencies."); *Grand Central Partnership, Inc. v. Cuomo*, 166 F.3d 473, 484 (2d Cir. 1999) ("[I]t is beyond question that FOIA applies only to federal and not to state agencies."); *Philip Morris, Inc., v. Harshbarger*, 122 F.3d 58, 83 (1st Cir. 1997) ("FOIA . . . applies only to federal executive branch agencies"); *Day v. Shalala*, 23 F.3d 1052, 1064 (6th Cir. 1994) (APA "pertains to federal agencies"); *Brown v. Kelly*, No. 93-5222, 1994 WL 36144, at *1 (D.C. Cir. Jan. 27, 1994) (per curiam ) (FOIA does not apply to state agencies); *St. Michael's Convalescent Hosp. v. State of California*, 643 F.2d 1369, 1373 (9th Cir. 1981) (definition of "agency" under FOIA "does not encompass state agencies or bodies"); *Johnson v. Wells*, 566 F.2d 1016, 1018 (5th Cir. 1978) (state board of parole not agency within meaning of FOIA).

*California*, 643 F.2d 1369, 1373 (9th Cir. 1981) (FOIA applies only to "agencies" as defined in 5 U.S.C. §§ 551(1) & 552(f)); *Citizens for Responsibility and Ethics in Wash. v. Office of Admin.*, 559 F. Supp. 2d 9, 19 (D.D.C. 2008) (granting motion to dismiss and finding that plaintiff failed to state a FOIA claim where defendant was not an agency under FOIA); *Aitro v. Clapper*, No. 05-3120, 2005 WL 1384063, at *2 (W.D. Mo. Jun. 8, 2005) ("As neither [entity] is a government agency, FOIA is inapplicable and Plaintiff has failed to state a claim . . . for which relief can be granted by this court.").

Second, FOIA requires a valid request for records, and Plaintiff does not allege that he made such a request from the FEC. The FEC is an independent regulatory agency, so it is subject to FOIA. FOIA "requires federal agencies to allow access to their records to any person who complies with the procedures set forth in the Act." *St. Mary Hosp. v. Phila. Prof. Standards Review Org., Inc.*, No. 78-2943, 1980 WL 19448, at *1 (E.D. Pa. June 25, 1980). However, Plaintiff does not allege that he complied with FEC guidelines regarding FOIA requests. *See generally* 11 C.F.R. § 4.7(b) (setting forth FEC guidelines for record requests under FOIA). It is entirely unclear from Plaintiff's Amended Complaint what type of request he actually made to the FEC. This alone warrants dismissal of the claim. *See, e.g.*, *Caraveo v. EEOC*, 96 Fed. App'x 738, 2004 WL 608590, at *3 (2d Cir. Mar. 26, 2004) (unpublished opinion) (affirming dismissal of FOIA claim where Plaintiff "failed to allege that he complied with [agency] guidelines regarding FOIA requests."). Moreover, it is unclear when or if Plaintiff made his alleged FOIA request to the FEC. *See* 11 C.F.R. § 4.7(c) (establishing procedures and deadlines for the FEC to respond to FOIA requests). "Without any showing that the agency received the request, the agency has no obligation to respond to it." *Hutchins v. Dep't of Justice*, No.

00-2349, 2005 WL 1334941, at *1-2 (D.D.C. June 6, 2005).

Third, before bringing a FOIA claim in federal court, a plaintiff must exhaust the available administrative remedies. *See Wilbur v. CIA*, 355 F.3d 675, 676 (D.C. Cir. 2004) (per curiam) ("Exhaustion of administrative remedies is a mandatory prerequisite to a lawsuit under FOIA."); *McDonnell v. United States*, 4 F.3d 1227, 1240 (3d Cir. 1993) (holding that plaintiff had an obligation to pursue administrative remedies prior to filing suit). In addition, a plaintiff must allege in his complaint that "he exhausted his remedies under FOIA" in order to properly plead a case. *Scherer v. Balkema*, 840 F.2d 437, 443 (7th Cir. 1988) (*citing Hedley v. United States*, 594 F.2d 1043 (5th Cir. 1979)). Exhaustion allows "the agency [ ] an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision." *Wilbur*, 355 F.3d 675, 677. "In the absence of such an allegation, [a plaintiff] states no claim upon which relief can be granted." *Scherer*, 840 F.2d at 443. Plaintiff alleges that the FEC has "ignored" his request. (Doc. No. 14-2 ¶ 146.) While FOIA "recognizes a constructive exhaustion doctrine for purposes of judicial review upon the expiration of certain relevant FOIA deadlines," *Spannaus v. U.S. Dep't of Justice*, 824 F.2d 52, 58 (D.C. Cir. 1987), Plaintiff does not allege expiration of any FOIA deadlines. Indeed, Plaintiff alleges no facts in his Amended Complaint that allow us to invoke the constructive exhaustion doctrine. Accordingly, Plaintiff's FOIA claim must be dismissed for this additional reason.

### E. Count Seven – Promissory Estoppel

In Count Seven, Plaintiff brings a promissory estoppel claim against Obama and the DNC. (*See* Doc. No. 14-2 ¶¶ 153-79.) Plaintiff asserts that he has "donated money and billable hours to Democratic Presidential candidates as well as the Democratic National Committee."

(*Id*. ¶ 154.)  In support of his claim, Plaintiff alleges, among other things, that the DNC promised to (a) "'use technology to make government more transparent, accountable, and inclusive,'" (*id*. ¶ 159), (b) "maintain and restore our Constitution to its proper place in our government and return our Nation to the best traditions, including their commitment to government by law" (*id*. ¶ 161), and (c) "'work fully to protect and enforce the fundamental Constitutional right of every American vote – to ensure that the Constitution's promise is fully realized'" (*id*. ¶ 163).  The source of these "promises" is a document titled "Renewing America's Promise," which presents the 2008 Democratic National Platform.  Plaintiff alleges that the DNC breached these promises by (1) promoting an "illegal candidate" to serve as President; (2) failing to investigate Obama's citizenship; and (3) failing to provide "accurate information" about Obama's eligibility for presidential office.  (*Id*. ¶¶ 162, 165.)  Plaintiff also asserts that Obama "has promised to uphold the United States Constitution and to be open and honest with all questions presented."  (*Id*. ¶ 167.)  He claims that Obama has violated both of these promises by refusing to provide proof of his citizenship status and by running for office even though "he is aware he is ineligible to serve as the President [sic] of the United States."  (*Id*. ¶ 167.)  Plaintiff also claims that Obama has breached his promise to uphold the Constitution by committing massive voter fraud to the tune of more than $450 million.  (*Id*.)  Plaintiff concludes:

> All elements required to invoke Promissory Estoppel have been met by Plaintiff.  The DNC and Obama made a promise to Plaintiff, which Plaintiff relied upon and expected.  Not only has Plaintiff suffered economic losses; [sic] he has lost his constitutional right to vote for an eligible Democratic candidate who can serve as the President of the United States, if elected.  The only way justice can be served is by the Court enforcing the promise of the DNC and Obama.

(*Id*. ¶¶ 177-78.)

Although Plaintiff does not specify the law on which he bases his claim, under any

definition of promissory estoppel there must be an enforceable promise.  *See, e.g.*, *168th &*

*Dodge, LP v. Rave Reviews Cinemas, LLC*, 501 F.3d 945, 955 (8th Cir. 2007) (finding, under

Nebraska law, that "[p]romissory estoppel requires evidence that the promisor made a 'promise'

to the promisee.  A statement of opinion or future intent is insufficient to give rise to a

promise"); *Garwood Packaging, Inc. v. Allen & Co.*, 378 F.3d 698, 702, 706 (7th Cir. 2004)

(finding, under Indiana law, that "the promise relied on to trigger an estoppel must be definite in

the sense of being clearly a promise and not just a statement of intentions" and that "if the

statements are not reasonably understood as legally enforceable promises there can be no action

for promissory estoppel"); *DeVoll v. Burdick Painting*, 35 F.3d 408, 412 n.4 (9th Cir. 1994)

(finding that, "[u]nder both California and federal common law, to establish an enforceable

contract based on promissory estoppel, the promisee must show (1) the existence of a promise . .

. ."); *Ankerstjerne v. Schlumberger Ltd*, No. 03-3607, 2004 U.S. Dist. LEXIS 9927, at *13-14

(E.D. Pa. May 12, 2004) (finding that, under Pennsylvania law, "[a] broad and vague implied

promise is not enough to satisfy" the promissory estoppel requirement that a promisor make a

promise that he should reasonably expect will induce action or forbearance on the part of

promisee) (*citing C & K Petroleum Prods., Inc. v. Equibank*, 839 F.2d 188, 192 (3d Cir. 1988),

*aff'd* 155 Fed. Appx. 48 (3d Cir. 2005); *see also Minehan v. United States*, 75 Fed. Cl. 249, 260

(2007) (finding that "the IRS's mission statement ['to provide America's taxpayers top quality

service by helping them understand and meet their tax responsibilities and by applying the tax

law with integrity and fairness to all'] is aspirational, and it makes no specific promise or offer

which could be deemed the basis for a contract"); *Estate of Bogley v. United States*, 514 F.2d

1027, 1033 (Ct. Cl. 1975) (finding that the passing of a motion and adopting of a resolution by a

corporation's board of directors did not constitute an offer or promise because "'[a] gratuitous and unsolicited statement of policy or of intention which receives the concurrence of the party to whom it is addressed, does not constitute a contract" (*quoting Goetz v. State Farm Mut. Auto. Ins. Co.*, 142 N.W. 2d 804, 807 (Wis. 1966))). The Restatement Second of Contracts provides that a "Promise Reasonably Inducing Action or Forbearance" is

> [a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

Restatement (Second) of Contracts § 90(1) (1981). The Restatement defines a promise as "a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." Restatement § 2(1).

The "promises" that Plaintiff identifies are statements of principle and intent in the political realm. They are not enforceable promises under contract law. Indeed, our political system could not function if every political message articulated by a campaign could be characterized as a legally binding contract enforceable by individual voters. Of course, voters are free to vote out of office those politicians seen to have breached campaign promises. Federal courts, however, are not and cannot be in the business of enforcing political rhetoric.

### F.     Count Eight – Immigration and Nationality Act, 8 U.S.C. § 1481(b)

In Count Eight of the Amended Complaint, Plaintiff alleges "loss of nationality" under an expatriation provision of the Immigration and Nationality Act, 8 U.S.C. § 1481(b). That provision provides:

> Whenever the loss of United States nationality is put in issue . . ., the burden shall be upon the person or party claiming that such loss occurred, to establish such claim by

32

a preponderance of the evidence. Any person who commits or performs . . . any act of expatriation . . . shall be presumed to have done so voluntarily, but such presumption may be rebutted upon a showing, by a preponderance of the evidence, that the act or acts committed or performed were not done voluntarily.

8 U.S.C. § 1481(b). The provision establishes the burden of proof in expatriation proceedings where "nationality is put in issue." In such a case, the Act places the burden of proving loss of citizenship "upon the person or party claiming that such loss occurred." *Id.* The provision on which Plaintiff relies sets up rules of evidence; it does not establish a private cause of action. *See Vance v. Terrazas*, 444 U.S. 252, 265 (1980) (*citing* H.R. Rep. No. 1086, 87th Cong., 1st Sess., 41, U.S. Code Cong. & Admin. News, p. 2985 (1961) ("The provision 'sets up rules of evidence under which the burden of proof to establish loss of citizenship by preponderance of the evidence would rest upon the Government.'")). Because the provision does not establish a cause of action, Plaintiff fails to state a claim under 8 U.S.C. § 1481(b).

## IV.    CONCLUSION

For the foregoing reasons, we will grant Defendants' Motions to Dismiss.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


PHILIP J. BERG                          :
                                        :           CIVIL ACTION
        v.                              :
                                        :           NO. 08-4083
BARACK OBAMA, et al.                    :


## ORDER

AND NOW, this <u>24th</u> day of October, 2008, upon consideration of the Motion of

Defendant Democratic National Committee and Senator Barack Obama to Dismiss First

Amended Complaint (Doc. No. 20) and the Defendant Federal Election Commission's Motion to

Dismiss for Lack of Subject Matter Jurisdiction (Doc. No. 24), it is ORDERED that:

  1.     The Motion of Defendant Democratic National Committee and Senator Barack

         Obama to Dismiss First Amended Complaint (Doc. No. 20) is GRANTED;

  2.     Defendant Federal Election Commission's Motion to Dismiss for Lack of Subject

         Matter Jurisdiction (Doc. No. 24) is GRANTED; and

  3.     Plaintiff's First Amended Complaint for Declaratory and Injunctive Relief is

         DISMISSED.

IT IS SO ORDERED.

                                                BY THE COURT:


                                                **/s/ *R. Barclay Surrick*, Judge**